[No. 33080. *En Banc.* February 9, 1956.]

THE STATE OF WASHINGTON, *Respondent*, v. THEODORE M. RYAN, *Appellant.*[1]

[1] Reported in 293 P. (2d) 399.

*John J. Champagne* and *Jane Dowdle*, for appellant.

*Hugh H. Evans* and *Leo J. Driscoll*, for respondent.

HAMLEY, C. J.—On December 15, 1953, Theodore M. Ryan was arrested for speeding on a state highway in Spokane county. On January 13, 1954, he was tried in justice court and found guilty. A fine of twenty dollars was imposed. Ryan appealed to the superior court. The case was tried by the court without a jury, and again Ryan was convicted. The fine, however, was reduced to ten dollars. From this conviction, Ryan has appealed to this court.

The first question presented relates to the validity of the arrest.

Appellant appeared in justice court and in superior court, and, without objecting to the manner of his arrest, pleaded not guilty. After the state had put in part of its evidence, appellant orally moved for a dismissal of the action on the ground that the arrest, by a member of the Washington state patrol, was unlawful because the statute (RCW 43.43.010 *et seq.* [*cf.* Rem. Rev. Stat., Vol. 7A, § 6362-59 *et seq.*]), creating the Washington state patrol, is unconstitutional. Appellant complains that the denial of this motion was error.

Thereafter, during the presentation of the defense, appellant made another oral motion for dismissal. This motion was made on the ground that the offense was not committed in the presence of the arresting officer. Such an arrest is forbidden by RCW 46.64.015 (Laws of 1951, chapter 175, § 1, p. 480). The denial of this motion is also assigned as error.

Where, for any reason, an arrest is invalid, but the defendant enters a plea of not guilty and is in court on the day of trial, the court has jurisdiction of his person. *State v. Melvern*, 32 Wash. 7, 72 Pac. 489. Where the court has jurisdiction of the person of a defendant, it is not a ground for

quashing or dismissing a criminal prosecution that he was not lawfully arrested. *State v. Melvern, supra; State v. Ditmar*, 132 Wash. 501, 232 Pac. 321.

Therefore, regardless of the validity of the arrest, the trial court did not err in denying the motions in question. Consequently, we do not find it necessary to pass upon the constitutionality of the statute creating the Washington state patrol, nor the validity of appellant's arrest for a traffic violation assertedly not committed in the presence of the arresting officer.

Appellant next contends that it was error to admit evidence regarding the use of an electromatic speed meter (commonly called radar), because its use constituted a violation of RCW 46.48.120 [*cf.* Vol. 7A, Rem. Rev. Stat., § 6360-74].

The statute in question reads as follows:

"No evidence as to the speed of any vehicle operated upon a public highway by any person arrested for violation of any of the laws of this state regarding speed or of any orders, rules, or regulations of any city or town or other political subdivision relating thereto shall be admitted in evidence in any court at a subsequent trial of such person in case such evidence relates to or is based upon the maintenance or use of a speed trap. A 'speed trap,' within the meaning of this section, is a particular section of or distance on any public highway, the length of which has been or is measured off or otherwise designated or determined, and the limits of which are within the vision of any officer or officers who calculate the speed of a vehicle passing through such speed trap by using the lapsed time during which such vehicle travels between the entrance and exit of such speed trap . . . ."

It will be observed that, under the above-quoted statute, a "speed trap" contemplates the use of a particular section of or distance on a public highway, the length of which has been or is measured off or otherwise designated or determined. It also contemplates that speed is to be calculated with reference to the lapsed time during which a vehicle travels between the entrance and exit of the measured section of highway.

■ An electromatic speed meter, placed in a vehicle parked at the side of a highway, broadcasts a high frequency signal in a beam, or pattern, down the highway. When the signal strikes an object, either stationary or moving, it is reflected back to the receiving antenna. If the reflecting object is moving in a general direction towards the device, the reflected signal will measure a different and higher frequency than that transmitted. The amount of change in the frequency of the signal, as between that transmitted and that received, is directly proportional to the speed of the object which reflects the signal. The frequency-measuring circuit measures this frequency variation, and the result is shown by the sweep of the pointer on the dial of the indicator unit. The dial is calibrated in "miles per hour," and is as easily read by any person as the ordinary automobile speedometer.

In using the device just described, no factor of lapsed time of a vehicle while traveling through a measured section of highway is involved. It follows that the use of such device does not constitute a "speed trap," within the meaning of the statute.

The two remaining points upon which appellant relies concern the admission of asserted hearsay evidence. Two items of such evidence are brought into question.

Patrolman Howard West was permitted to testify, over objection, that appellant's car was traveling at fifty-six miles per hour when it passed the car which was equipped with the electromatic speed meter. West was two hundred yards away from the radar-equipped car, and he did not have personal knowledge of appellant's speed in passing that vehicle. He received the information as to such speed, via radio, from Sergeant L. M. Giles, who was operating the electromatic speed meter.

Professor Richard D. Harbour, assistant professor of electrical engineering, State College of Washington, testified that, in making a roadside test of the speed meter several months after the arrest, he was assisted by a state patrolman. Over objection, Professor Harbour testified that this state patrolman reported to the witness the readings of the

automobile speedometer when the vehicle was passing through the radar beam at the testing location.

Where a case is heard by a judge without a jury, a new trial should not be granted for error in the admission of evidence, if there remains substantial admissible evidence to support the findings, unless it appears that the findings are based on the evidence which should have been excluded. *Ikeda v. Curtis*, 43 Wn. (2d) 449, 261 P. (2d) 684.

The findings in this case are not based on the testimony which appellant contends should have been excluded as hearsay. In his oral opinion at the close of the case, the trial judge stated, with reference to the challenged items of hearsay testimony, "I am going to strike them from the testimony and not consider them." We must accept the trial judge's statement that he disregarded the challenged testimony entirely.

Appellant does not contend that the striking of this testimony left insufficient admissible evidence to support the conviction. In any event, as indicated below, the remaining admissible evidence was sufficient with regard to both points covered by the excluded testimony.

The testimony of Officer West which was excluded was to the effect that Sergeant Giles had advised him over the radio that appellant was traveling fifty-six miles per hour. But, after the exclusion of this testimony, there remained the direct and unchallenged testimony of Sergeant Giles that appellant was traveling at that rate of speed.

The testimony of Professor Harbour which was excluded had to do with a roadside test made several months after the arrest, in connection with his study of the accuracy of the electromatic speed meter. With this testimony excluded, there remained in the record a wealth of testimony to the effect that this device can, with reasonable accuracy, measure the speed of a moving vehicle on the highway.

Testimony to this effect was given by three expert witnesses. Two of these witnesses, Professor Harbour and John C. Black, graduate electrical engineer employed by the Washington state patrol, were called by the state. The

third, Herbert Webb, associate professor of engineering at Gonzaga University, was called by appellant. There was no testimony to the contrary by any witness.

It is true that, with the challenged portion of Professor Harbour's testimony excluded, there was no evidence in the record concerning a roadside test of accuracy based upon a check against the speedometer of a moving vehicle.

Appellant, however, makes no contention that such a test is necessary in order to establish the reasonable accuracy of such a device. Nor did any of the experts who testified in this case express the view that such a test was essential. In fact, the only opinion expressed on this subject was to the contrary. In expressing this view, Professor Harbour indicated that, since a speedometer is intrinsically less reliable than an electromatic speed meter, a discrepancy in readings would indicate only inaccuracy of the speedometer, and not of the electromatic speed meter.

· The case before us is to be distinguished from *State v. Dantonio,* 18 N. J. 570, 115. A. (2d) 35, decided June 20, 1955, where evidence of a roadside test was held to be essential to conviction. The case before us differs from the *Dantonio* case in at least three important respects: (1) In *Dantonio,* the defendant challenged the admissibility of the evidence of readings, on the ground that the accuracy of the device had not been established—here there was no such challenge, nor even a contention that the remaining evidence was not sufficient. (2) In *Dantonio,* there was no expert testimony as to the general nature and trustworthiness of the device—here there was undisputed testimony by witnesses produced by both sides, to the effect that such devices, and the particular device here used, were reasonably accurate. (3) In *Dantonio,* there was expert testimony approving the efficacy of a roadside check against the speedometer of a moving vehicle as a test of the accuracy of the electromatic speed meter—here the expert testimony was to the effect that such a check would not be a proper way to test the accuracy of the electromatic device.

We need not decide what our ruling would be, under circumstances similar to those which were present in *State v.*

*Dantonio.* The conviction not having been based upon the testimony which was questioned under the hearsay rule, and the remaining admissible evidence being sufficient to support the findings, the admission of the challenged testimony, if erroneous, was not prejudicial.

The judgment and sentence is affirmed.

MALLERY, HILL, FINLEY, WEAVER, and OTT, JJ., concur.

DONWORTH, J. (concurring in the result)—I concur in all of the majority opinion except that latter portion which holds that a recent roadside operational test of the electromatic speed meter was not necessary to establish the accuracy of the device at the time and place of appellant's arrest. Specifically, my objection to that portion of the opinion is that it is susceptible of an inference that law enforcement officers may obtain convictions based solely upon their testimony that the "radar reading" showed the operation of a vehicle at a speed in excess of the legal limit, together with evidence that the instrument was checked for accuracy (in a laboratory) one month before, and again two and one-half months after, the arrest. The necessity of roadside tests of the device is discussed in 33 N. C. L. Rev. 343 (April 1955).

While in my opinion the "radar evidence" in the record does not provide a competent basis for sustaining appellant's conviction, I nevertheless feel that, because of other competent evidence in the record, the judgment should be affirmed.

Patrolman West, the arresting officer, and Sergeant Giles, operator of the radar car, both testified that, by the use of their senses of sight and hearing, they observed the approach of appellant's vehicle. Patrolman West testified, "in my opinion the vehicle was traveling, outside of any machine to tell me, I would say it was traveling a good fifty miles per hour." Sergeant Giles testified, "I knew the vehicle was speeding in excess of the thirty-five miles an hour speed limit before it came into the radar pattern."

It is my opinion that this testimony of these officers, which the trial court chose to believe, is a sufficient basis

upon which to sustain a conviction of the misdemeanor with which appellant was charged, and that the judgment should be affirmed upon that ground alone, without reference to the "radar evidence."

ROSELLINI, J. (dissenting)—This judgment could not be sustained on the basis of the independent evidence as to speed.

On the evening in question, about eleven o'clock, Sergeant Giles, by use of radar, observed the Ryan car traveling at fifty-six miles an hour. He radioed Officer West, who was stationed in a car six hundred feet down the road, the following message:

"General Motors—first three numbers—789-56."

Officer West, understanding that to mean fifty-six miles per hour, turned on the red light, waved a flash light, stopped Ryan, advised him that he had been clocked by radar at fifty-six miles an hour, and issued to Ryan an arrest citation for the offense of operating his vehicle at the speed of fifty-six miles per hour in a thirty-five-mile zone.

Reading from the court's oral opinion, I find that it did not base the conviction of the appellant upon the independent evidence of speed; the court mentioned such evidence only in connection with the question as to the lawfulness of the arrest. The trial court, after announcing that it was striking from the testimony the hearsay statement made by Officer Giles to Officer West and would not consider it, made finding of fact No. 1:

"That on the 15th day of December, 1953, in the County of Spokane, State of Washington, the defendant, Theodore M. Ryan, did drive and operate a motor vehicle over and along a public highway of the State of Washington, at the speed of fifty-six miles per hour."

This was the only finding concerning speed. In discussing this finding, the court makes frequent reference to the radar testimony; and it seems to me to indicate that the court relied solely upon radar evidence in making the above finding. Thus, the question relating to the use of radar must be considered.

I agree with the majority that an electromatic speed meter, or radar, does not constitute a "speed trap."

I agree that the electromatic speed meter, commonly known as radar, is a scientific instrument, which, *if properly operated* and *properly functioning*, will accurately measure the speed of a moving vehicle.

Dr. John M. Kopper's article, 33 N. C. L. Rev. 343, in discussing the scientific reliability of radar, points out that the operator thereof should have at least one and one-half to two hours of instruction and training in the use thereof, and that the proper and adequate use of an electromatic speed meter depends upon the operator's care and judgment. It further points out that the radar speed meter will read the higher of the speeds of two cars running simultaneously through the zone at different speeds. If two cars are running abreast of each other at the same speed through the zone, the radar cannot tell which car is being observed, but its reading will be the speed of either of them. It is then up to the operator to ascertain that the cars are traveling abreast of each other. If one car is passing another, the radar speed meter reads the higher of the two speeds. The meter reads the speed of both oncoming and receding vehicles with equal accuracy. However, a car traveling along the other side of the road, going in the opposite direction to that of the car being observed, will be farther away when it is in the operating zone of the meter than the one being observed and will reflect back a much weaker signal than that coming from the car under observation.

In a simple traffic pattern, the electromatic speed meter may take the place of an ordinary mechanical speedometer as an instrument which accurately measures the speed of moving vehicles. However, in a more complicated traffic pattern, the electromatic speed meter's value as evidence of the speed of a moving vehicle depends upon the ability and training of the operator of the radar instrument to establish the relation of what is observed upon the meter to the particular vehicle's speed which is being measured.

In answer to the question of what training Officer Giles

had had in the operation of an electromatic speed meter, he testified:

"The training, I explained in Justice Court, was the same training that I explained here—a simple operation of testing and warming up the speed meter, locating the box in the trunk. That is the sum total of my training."

The law presumes one accused of a crime to be innocent until all essential elements of the crime charged have been established beyond a reasonable doubt by legally admissible evidence.

The lack of training of the operator of the electromatic speed meter creates a doubt as to whether he could properly interpret what the meter reflected.

The judgment of conviction, therefore, should be reversed.

SCHWELLENBACH, J., concurs with ROSELLINI, J.