[No. 40459.    Department One.    January 29, 1970.]

THE STATE OF WASHINGTON, *Respondent*, v. AQUILLA MILES,
*Appellant*.*

*Edward H. Mc Kinlay* (of *Horrigan, Sullivan & Mc
Kinlay*), for appellant (appointed counsel for appeal).

*Reported in 464 P.2d 723.

*C. J. Rabideau* and *Laurence S. Moore,* for respondent.

HAMILTON, J.—The defendant, Aquilla Miles, was charged in the Superior Court for Franklin County, Washington, with two counts of rape and two counts of assault in the second degree. He pled not guilty as to each count, waived jury trial, and was tried before the court. At the conclusion of the evidence, the trial court found him guilty as to one count of rape and two counts of assault in the second degree. He was sentenced to not more than 10 years imprisonment on each of the assault counts and to not less than 5 nor more than 20 years on the rape count, the sentences to run consecutively. He has appealed. Summarized, the background circumstances are these:

In the early part of January, 1968, appellant, a casual laborer, rented and moved into a room in the residence of one Sam Miller, a barber in East Pasco, Washington. Appellant testified that shortly after moving in some of his personal belongings were pilfered by a friend of his landlord, Clara Smith, a young woman married to but separated from an alleged panderer. On the evening of January 16th, appellant discussed the purported pilferage with Clara and her male companion at a nearby tavern. The outcome of this discussion is unclear.

About 8 p.m., on January 17th, Clara called at the Miller residence. She testified she went there to borrow money from Mr. Miller, was met at the door by appellant, told that Mr. Miller was absent, pulled into the house, struck and threatened with a pistol, taken to appellant's room, and raped. Shortly thereafter she and her boy friend reported the occurrence to the police, who, in turn, went to the Miller residence and questioned but did not then arrest appellant.

Appellant's version of this incident is to the effect that Clara arrived at the Miller residence with her boy friend in his automobile, appeared at the front door, asked for Mr. Miller and, upon being advised Miller was not there, promptly departed. He stated that the police later called at

the residence but were seeking Mr. Miller and did not question him.

The police officers involved testified that Clara and her boy friend appeared at the police station shortly after 8 p.m., registered a complaint embracing her version of the incident, described appellant's physical appearance, and identified him by nickname. At that time, an officer said Clara displayed a swollen upper lip. Following this report, the officers stated they went to the Miller residence to question appellant. When appellant, in the presence of a third person then on the premises, denied any such occurrence, the officers sought Clara to obtain further indentification and verification but were advised by her boy friend that she had gone to work and would not be available until the next morning. They took no further action that evening.

In the meantime, and between 10:30 and 11 p.m., of the same evening, Mr. Miller and a second roomer in the Miller residence, returned to the Miller home. After watching television for a short time with appellant, the two tenants retired to their respective rooms and Mr. Miller commenced preparations for sleeping on a daveno in the living room. At this time, a Mrs. Cornelia Smith, who had spent the preceding evening hours at the nearby tavern, appeared at the front door seeking to borrow money from Mr. Miller. Mr. Miller advised her he had no money to lend but invited her in for a sandwich. As he was obtaining the ingredients in the kitchen, Mr. Miller stated that appellant came from his room, gave Cornelia Smith "a lick," and ordered her into his room, whereupon Mr. Miller ran from the house to seek assistance after unsuccessfully attempting to arouse the other roomer. The other roomer stated he was awakened by yelling and screaming; that he recognized appellant's voice as well as the voice of Cornelia Smith, whom he had previously met; that the tenor and tone of appellant's voice was threatening and the wiping up of blood was mentioned; that the yelling and screaming lasted for several minutes, moved from the kitchen to the living room and

culminated with a door slamming and some mumbling; and that he did not interfere because he thought appellant and Cornelia may have been married.

Cornelia Smith, in essence, testified that between 10:30 and 11 p.m. she left the nearby tavern and went to Mr. Miller's residence for the purpose of borrowing money from him; that when he could not lend her any money she requested food and they both went to the kitchen to make a sandwich; that appellant then appeared, upbraided her, struck and beat her about the face and head with a pistol, forced her to mop up the blood on the floor which had flowed from her wounds, pushed her into his bedroom, made her undress, raped her and imprisoned her in his bedroom until about 7:30 a.m. January 18, 1968; that upon her arrival at home, her husband, upon being told of the occurrence, notified the police and on the evening of January 18th she went to the police station and registered her complaint.

Appellant denied forcing intercourse upon Cornelia Smith. Instead, appellant said he had been approached by her earlier in the evening at the tavern with the suggestion that she would rendezvous with him in his bedroom for a stipulated price. He stated he accepted her offer and that the transaction was consummated when she later appeared and remained in his quarters overnight. He denied ever striking her, saying that she was bruised and bleeding when he first saw her at the tavern and remained so throughout her visit with him. Furthermore, he denied owning a pistol of any kind.

The police officers testified that following Cornelia Smith's complaint and identification of appellant they went to the Miller house, advised appellant of the complaints against him and of his constitutional rights, placed him under arrest in the living room of the residence, and searched his bedroom. The search uncovered only a plastic toy pistol, which neither Clara nor Cornelia Smith could identify as the weapon they were threatened or struck with.

Other witnesses and evidence presented by the state and the defense tended to corroborate or dispute in varying degrees the testimony of the various participants.

The trial court by its findings of fact and conclusions of law determined that as to Clara Smith appellant was not guilty of rape but guilty of assault in the second degree, and as to Cornelia Smith appellant was guilty of both rape and assault in the second degree.

On appeal, appellant makes seven assignments of error.

By his first assignment of error, appellant challenges the trial court's denial of his motion for continuance made on the morning trial commenced. The basis upon which appellant predicated his motion was that he wanted additional time within which to employ his own counsel.

A review of the record indicates that appellant was charged with the crimes alleged on January 22, 1968. Counsel was appointed to represent him on January 26th because of his indigency, but he preferred to seek private counsel and attempted to do so without success until February 9th, at which time the court reappointed counsel for him and he was arraigned. On February 16th, his bail was reduced following which he secured a bail bond and was released. Trial was set for March 25, 1968. Defendant continued to seek private counsel and, at his request, trial of his cause was continued until May 6th. On May 6th, the state appeared with its witnesses, one of whom was a serviceman from out of state and his future availability along with the future availability of other witnesses was questionable. Appellant had yet to retain his own attorney, and tendered his motion for continuance through his court appointed counsel who had continued to represent him since arraignment. At the conclusion of the state's case, appellant was granted two continuances to permit him to locate additional witnesses.

■ The granting or denying of a motion for continuance of the trial of a case, whether criminal or civil, rests within the sound discretion of the trial court, and this court will not disturb the trial court's ruling absent a showing that the trial court in ruling upon the motion either failed

to exercise its discretion or manifestly abused its discretion. *State v. Bailey,* 71 Wn.2d 191, 426 P.2d 988 (1967); *State v. Moe,* 56 Wn.2d 111, 351 P.2d 120 (1960); *State v. Hartwig,* 36 Wn.2d 598, 219 P.2d 564 (1950).

We find no abuse or failure of discretion on the part of the trial court under the circumstances of the instant case. Neither do we find any prejudice flowing to appellant by virtue of the fact that he was required to go to trial with court appointed counsel. The attorney appointed by the court was of recognized competence and experienced in the defense of criminal cases. The record indicates he represented appellant skillfully throughout all stages of the proceedings.

By his second assignment of error, appellant complains of the trial court's action in sustaining the prosecuting attorney's objections to defense counsel's efforts to ascertain the extent of Clara Smith's knowledge of her husband's purported pandering activities. Assuming without deciding that the evidence sought by defense counsel was admissible for impeachment purposes, we find no merit in this assignment.

In the first place the cause was tried to the court sitting without a jury, and a considerable latitude was permitted in cross-examination of both Clara and Cornelia Smith concerning their moral attitudes and activities. Furthermore, defense counsel was permitted to elicit an admission from Clara Smith that she knew the nature of her husband's illicit activities before her marriage and separation to and from him. And, in the second place, the scope of cross-examination as well as the admission of evidence of immoral conduct for impeachment purposes rests within the discretion of the trial court. *State v. Eichman,* 69 Wn.2d 327, 418 P.2d 418 (1966); *State v. Brown,* 68 Wn.2d 852, 416 P.2d 344 (1966). We find no abuse of discretion on this score.

We pass for the moment appellant's third and fourth assignments of error, and turn to his fifth assignment which challenges the sufficiency of the evidence to sustain the

finding of guilt as to the charge of rape with respect to Cornelia Smith.

In *State v. Bell*, 59 Wn.2d 338, 352, 368 P.2d 177 (1962), we stated:

> The trial court, in a criminal case (where a jury has been waived), has the duty of evaluating the testimony of the various witnesses where there is a conflict and of making findings of fact. *Cf. State v. Mercy*, 55 Wn. (2d) 530, 348 P. (2d) 978 (1960). As in a civil case, our function is to determine whether there was substantial evidence to support the findings which are challenged in appellant's assignments of error. If so, we must accept the findings as verities.

Applying this approach, our review of the record convinces us that there was an abundance of substantial evidence which, if believed by the trier of the facts, supports the finding of guilt to which error is assigned. Further discussion of this assignment of error is unwarranted.

By his sixth claim of error appellant attacks the finding of guilt with respect to the charge of second-degree assault as related to Clara Smith. He contends the evidence fails to establish the infliction of grievous bodily harm.

The charging part of the pertinent count of the information under which appellant stood trial reads:

> That the said Aquilla Miles in the County of Franklin, State of Washington, on or about the 17th day of January, 1968, then and there wilfully, unlawfully and feloniously did, under circumstances not amounting to assault in the first degree, wilfully inflict grievous bodily harm upon another, to-wit: did strike with his fists one Clara Smith.

It is thus apparent that appellant was charged pursuant to that part of RCW 9.11.020, which defines the offense as follows:

> Every person who, under circumstances not amounting to assault in the first degree—
>
> . . .
>
> (3) Shall wilfully inflict grievous bodily harm upon another with or without a weapon; or
>
> . . .
>
> Shall be guilty of assault in the second degree . . .

The information was in nowise amended during trial or at the conclusion of all of the evidence to embrace any other form of assault in the second degree, *e.g.*, an assault with a weapon or other instrument likely to produce bodily harm or an assault with intent to commit a felony (RCW 9.11.020(4), (6)). And, the trial court's findings of fact recite that the conclusion of guilt rested upon a determination that appellant had inflicted grievous bodily harm upon Clara Smith by striking her with a pistol or his fist. Furthermore, resort to the trial court's oral decision reveals that the court seriously questioned the veracity of Clara, entertained grave doubts that any rape had taken place, and opined that any blow or blows involved may have been struck as a result of appellant's belief that Clara had previously pilfered his belongings.

In *State v. Linton*, 36 Wn.2d 67, 216 P.2d 761 (1950), we cited with approval *State v. Laughlin*, 105 Mont. 490, 73 P.2d 718 (1937), and found appropriate an instruction to a jury which defined the phrase "grievous bodily harm" as used in RCW 9.11.020(3) as follows, at 95:

"The words 'grievous bodily harm' include any hurt or injury calculated to interfere with the health or comfort of the person injured; it need not necessarily be an injury of a permanent character. By 'grievous' is meant atrocious, aggravating, harmful, painful, hard to bear, serious in nature."

In the instant case, the testimony, taken at its best, indicated that Clara Smith suffered no physical injury greater than a cut lip as a result of any blow struck by appellant. Clara Smith and her boy friend both characterized the injury as simply a cut lip. One of the police officers who interviewed her at the police station said he noticed only a swollen lip. Another officer said he did not observe anything untoward about her appearance. None of the witnesses was called upon to elaborate upon the nature, size, extent, or degree of the cut or the swollen lip. There was

no testimony whatsoever as to any other bruises or contusions.

Upon this state of the record we cannot say that the trial court's finding that Clara Smith suffered "grievous bodily harm" as a result of any blows struck by appellant is sustained by substantial evidence. Appellant should not, therefore, have been convicted of assault in the second degree under RCW 9.11.020(3). At most, all that was established under the evidence presented on this count was assault in the third degree.

At this point we turn back to appellant's third and fourth assignments of error, which have to do with the admission into evidence of the plastic toy pistol discovered by the police at the time they arrested appellant.

By his third assignment of error appellant contends the pistol was inadmissible in evidence because it was the product of an unlawful search and/or was not properly identified. By his fourth assignment of error appellant asserts that the trial court's findings are inadequate with respect to the part played by the toy pistol in the events of January 17, 1968.

We find no prejudicial or reversible error arising from either assignment of error.

The action was tried to the court sitting without a jury. In such instances a liberal practice in the admission of evidence is followed in this state, supported, as it is, with a presumption on appeal that the trial judge, knowing the applicable rules of evidence, will not consider matters which are inadmissible when making his findings. *State v. Bell, supra.* And, in nonjury proceedings a new trial ordinarily will not be granted for error in the admission of evidence, if there remains substantial admissible evidence to otherwise support the trial court's findings. *State v. Ryan,* 48 Wn.2d 304, 293 P.2d 399 (1956).

In the instant case, the information charging the appellant with the offenses involved contained no allegation that the appellant was armed with a deadly weapon at the time of commission, and the trial court made no specific finding,

pursuant to RCW 9.95.015,[1] that he was so armed. There is abundant evidence, aside from the toy pistol, to support the findings of guilt as to rape and assault in the second degree with respect to Cornelia Smith. Her statements concerning appellant's threats and administration of physical violence upon her are corroborated by other witnesses and reinforced by a photograph taken at the police station on January 18, 1968, indicating that she had shortly before received a severe beating about the face and head. Indeed, appellant has not challenged the sufficiency of the evidence with respect to the finding of guilt on the assault charge pertaining to Cornelia. Had the trial court sustained appellant's objection to the admission of the toy pistol such action would have in no way diminished the impact of the other evidence.

As we have heretofore indicated, appellant was found not guilty upon the rape charge as to Clara Smith and we have concluded that the evidence was insufficient to sustain the finding of guilt upon the accompanying second-degree assault charge. Appellant's claims of error, therefore, are groundless as they pertain to these charges.

Finally, by his last assignment of error appellant contends the trial court abused its discretion in requiring the sentences imposed upon him to run consecutively rather than concurrently.

RCW 9.92.080 provides:

Whenever a person shall be convicted of two or more offenses before sentence has been pronounced for either, the imprisonment to which he is sentenced upon the

---

[1]RCW 9.95.015 provides:

"In every criminal case wherein conviction would require the board of prison terms and paroles to determine the duration of confinement and wherein there has been an allegation and evidence establishing that the accused was armed with a deadly weapon at the time of the commission of the crime, the court shall make a finding of fact of whether or not the accused was armed with a deadly weapon, as defined by RCW 9.95.040, at the time of the commission of the crime, or if a jury trial is had, the jury shall, if it find the defendant guilty, also find a special verdict as to whether or not the defendant was armed with a deadly weapon, as defined in RCW 9.95.040, at the time of the commission of the crime."

second or other subsequent conviction shall commence at the termination of the first or other prior term or terms of imprisonment to which he is sentenced; and whenever a person while under sentence of felony shall commit another felony and be sentenced to another term of imprisonment, such latter term shall not begin until the expiration of all prior terms: *Provided* that whenever a person is convicted of two or more offenses set forth as separate counts in one indictment or information the court may, in pronouncing sentence, provide that sentences therefor shall run concurrently.

In commenting on this statute, we said in *Grieve v. Smith,* 26 Wn.2d 156, 173 P.2d 168 (1946), at 158:

It would appear that, under this section, the legislature has intended that, as a general rule when a person is convicted of more than one offense, the sentences shall run consecutively. *In re Sanford,* 10 Wn. (2d) 686, 118 P. (2d) 179. The only exception to this rule is that the legislature has authorized the court to provide for the sentences to run concurrently when the defendant has been convicted of two offenses joined in the same information.

Since the authorization to impose a concurrent sentence is the exception to the general rule, it is apparent that the use of the word "may" in this proviso leaves the determination as to whether or not the sentences should be concurrent or consecutive within the discretion of the trial court, and that, when two or more convictions are obtained on an information charging more than one crime, the court may, under this statute, sentence the defendant to either consecutive or concurrent terms.

In this case, the trial court had before it evidence of an unprovoked and brutal assault followed by a raping of Cornelia Smith, an Indian girl. The fact that her circumstances in life may have propelled her to the "wrong side of the tracks," so to speak, neither warrants nor justifies the violence and immorality of the attack, nor does it elevate the underlying nature of appellant's character. Furthermore, the evidence revealed that appellant had several prior convictions with accompanying jail incarcerations, none of which seemingly left any lasting impression upon him with respect to his responsibilities toward the rights of

604

others. Although we may have been otherwise motivated had we been the sentencing judge, we cannot say under the circumstances appearing here that the trial court abused its discretion in directing that the sentences be served consecutively rather than concurrently. We accordingly find no substantial merit in this assignment of error.

The conviction and sentence of appellant upon the separate counts of assault in the second degree and rape with respect to Cornelia Smith are affirmed. The conviction and sentence of appellant upon the count of assault in the second degree as to Clara Smith is reversed and vacated and the cause is remanded for entry of findings, conclusions, and judgment as to appellant's culpability on the lesser included offense of assault in the third degree.

HUNTER, C. J., WEAVER and NEILL, JJ., and LEAHY, J. Pro Tem., concur.

*Reported in 464 P.2d 947.