[No. 39883-4-II.   Division Two.   November 20, 2012.]

THE STATE OF WASHINGTON, *Respondent*, v. DAVID JOEL GOWER, *Appellant*.

32

34

*Rebecca W. Bouchey* (of *Nielsen, Broman & Koch, PLLC*), for appellant.

*Mark E. Lindquist, Prosecuting Attorney*, and *Brian N. Wasankari, Deputy*, for respondent.

¶1 JOHANSON, J. — David Joel Gower appeals his bench trial convictions for two counts of indecent liberties by forcible compulsion (counts II and IV) and one count of second degree incest (count III) for sexual contact with his stepdaughter, SEH. He argues (1) the trial court erroneously admitted evidence of his prior acts of child molestation under RCW 10.58.090,[1] (2) the evidence was insufficient to support his convictions, and (3) cumulative error requires reversal. We hold that it was error to admit evidence of Gower's prior sex offenses under RCW 10.58-.090 because our Supreme Court has held that statute unconstitutional. But because we have the benefit of the

---

[1] RCW 10.58.090, held unconstitutional in *State v. Gresham*, 173 Wn.2d 405, 432, 269 P.3d 207 (2012), provided for the admissibility of a defendant's prior sex offenses when charged with a current sex offense, notwithstanding ER 404(b).

trial court's specific findings of fact and conclusions of law in support of each guilty verdict, we further hold that substantial, independently admissible evidence supports Gower's convictions for counts II, III, and IV, and we affirm those counts, holding harmless the trial court's admission of Gower's prior sex offenses under RCW 10.58.090.

## FACTS

¶2 The State charged Gower with first degree child rape,[2] alleging that he digitally penetrated SEH on an occasion years earlier (count I). The State also charged Gower with indecent liberties by forcible compulsion[3] and first degree incest,[4] alleging sexual contact and sexual intercourse with SEH while she rode with Gower in his truck (counts II and III). And the State further charged Gower with indecent liberties by forcible compulsion and second degree assault with sexual motivation,[5] alleging that he spanked SEH for sexual gratification (counts IV and V).

¶3 Pretrial, the State moved to admit the testimony of both CM, Gower's daughter, and JK, Gower's former stepdaughter. Both witnesses testified pretrial that Gower had inappropriately touched and physically abused them as children. The trial court ruled that both witnesses' testimonies were inadmissible under ER 404(b). It admitted CM's testimony under RCW 10.58.090 but denied admission of JK's testimony. The court held a bench trial in July 2009, and based on the evidence presented, it found the following

---

[2] RCW 9A.44.073.

[3] RCW 9A.44.100(1)(a).

[4] RCW 9A.64.020(1)(a).

[5] RCW 9A.36.021; RCW 9.94A.835.

facts:[6] Between January 1 and November 10, 2001, when SEH was 11 years old, Gower digitally penetrated her in her bedroom.

¶4 Between August 1 and September 10, 2007, Gower learned that SEH had used a cell phone while driving. As punishment, Gower, a truck driver, ordered SEH to either ride with him in his truck on a trip from Tacoma, Washington, to Astoria, Oregon, or else receive a spanking. Gower had struck SEH in the past. SEH opted for the truck ride; and, while driving, Gower ordered SEH to remove her pants and underwear, touched her breasts and genitals, and digitally penetrated her.[7]

¶5 On September 19, SEH accidentally clogged the kitchen sink drain. Gower was upset and ordered SEH to the basement to be punished. Gower told SEH to remove her pants and underwear and spanked her with a coat hanger, asking, "[A]re we having fun yet?" Clerk's Papers (CP) at 15. After the spanking, SEH was crying and without pants or underwear.

¶6 Both Gower and SEH's mother were involved in Tacoma's sadomasochism community. Gower called witnesses to testify about his involvement in the sadomasochism community, and based on their testimony, the trial court found that the objective of spanking within the sadomasochism community is to satisfy sexual desire. The court further found that there is a sexual component to such spanking because "normal things in life do not satisfy the sexual desires" of a sadomasochism practitioner. CP at

---

[6] Gower does not assign error to the trial court's findings of fact following his bench trial, making them verities on appeal. *State v. Kaiser*, 161 Wn. App. 705, 724, 254 P.3d 850 (2011).

[7] According to SEH, Gower began the sexual contact as soon as the truck's heater warmed the cab. She said once she was in the truck, she had three choices of physical punishment: (1) take one breast at a time out of her shirt and allow Gower to touch and twist her nipple and (2) remove her pants to allow Gower to rub her clitoris or (3) insert his finger into her vagina and twist its lips. Ultimately though, SEH explained that Gower determined that he would perform each of the punishments.

14. Gower did not object to the evidence underlying these findings and conclusions.

¶7 Based on these findings, the trial court concluded as a matter of law that Gower was not guilty of counts I, III (as charged), and V, but guilty of counts II, III (inferior degree), and IV. On count I, the trial court concluded that SEH's testimony regarding the digital penetration when she was 11 years old lacked sufficient detail to constitute proof beyond a reasonable doubt that the incident occurred, finding Gower not guilty of first degree child rape. On count III, the trial court concluded that although there was evidence that Gower had sexual intercourse with SEH in his truck, the evidence that it occurred in Washington was insufficient, finding Gower not guilty of first degree incest. And on count V, the trial court concluded that the State had not proved that Gower's spanking of SEH was unauthorized under RCW 9A.16.100,[8] finding him not guilty of second degree assault with sexual motivation.

¶8 The trial court did conclude, however, that Gower was guilty of the inferior degree offense of second degree incest[9] (count III) because there was sufficient evidence that sexual contact in Gower's truck occurred in Washington. The trial court also concluded that Gower was guilty of indecent liberties by forcible compulsion for the sexual contact in Gower's truck (count II) and indecent liberties by forcible compulsion for spanking SEH (count IV). Gower appeals these three convictions.

## ANALYSIS

## I. RCW 10.58.090

¶9 The trial court ruled that CM's testimony was not admissible under ER 404(b) but that it was admissible

---

[8] RCW 9A.16.100 provides that "the physical discipline of a child is not unlawful when it is reasonable and moderate and is inflicted by a parent, teacher, or guardian for purposes of restraining or correcting the child."

[9] RCW 9A.64.020(2)(a).

under RCW 10.58.090. Gower argues that the trial court erred by admitting CM's testimony under RCW 10.58.090. Although we agree the admission of CM's testimony was error under RCW 10.58.090, we hold that it was harmless error.

¶10 RCW 10.58.090(1) provides, "In a criminal action in which the defendant is accused of a sex offense, evidence of the defendant's commission of another sex offense or sex offenses is admissible, notwithstanding Evidence Rule 404(b), if the evidence is not inadmissible pursuant to Evidence Rule 403." Our Supreme Court in *State v. Gresham*, 173 Wn.2d 405, 432, 269 P.3d 207 (2012), held that RCW 10.58.090 violates the separation of powers by interfering with the judiciary's authority to determine court procedural law. As such, CM's testimony was improperly admitted under RCW 10.58.090.

¶11 Because the trial court also found that CM's testimony was not admissible under ER 404(b), we next determine whether admission of this evidence under RCW 10.58.090 was harmless. *Gresham*, 173 Wn.2d at 432-33. Admission of improper evidence is harmless if there is no reasonable probability that the error materially affected the trial's outcome.[10] *Gresham*, 173 Wn.2d at 433. As our Supreme Court recognized in *Gresham*, evidence of prior sex offenses is highly prejudicial in sex offense cases. 173 Wn.2d at 433. But, "[w]here a case is heard by a judge

---

[10] Gower argues that admitting CM's testimony and the evidence about his involvement in sadomasochism violated his Fourteenth Amendment right to due process because it constituted propensity evidence, citing *Garceau v. Woodford*, 275 F.3d 769, 775 (9th Cir. 2001), *overruled on other grounds*, 538 U.S. 202, 123 S. Ct. 1398, 155 L. Ed. 2d 363 (2003). He thus argues that we must review this error under the constitutional harmless error standard: whether, beyond a reasonable doubt, the error did not affect the verdict. But the Washington Supreme Court in *Gresham* rejected this argument, holding that we analyze the admission of evidence under ER 404(b) under the lesser standard for nonconstitutional error. Moreover, because Gower did not attempt to preclude admission of sadomasochism evidence, and even introduced his own sadomasochism evidence, he either failed to preserve any challenge for appeal or invited any error. *See* RAP 2.5(a); *see also State v. Myers*, 133 Wn.2d 26, 36, 941 P.2d 1102 (1997) ("A party may not set up error at trial and then complain of it on appeal.").

without a jury, a new trial should not be granted for error in the admission of evidence, if there remains substantial admissible evidence to support the findings, unless it appears that the findings are based on the evidence which should have been excluded." *State v. Ryan*, 48 Wn.2d 304, 308, 293 P.2d 399 (1956). Moreover, a trial court commits reversible error only when it considers inadmissible evidence and the defendant can show that the verdict is not supported by sufficient admissible evidence, or that the trial court relied on the inadmissible evidence to make essential findings that it otherwise would not have made. *State v. Read*, 147 Wn.2d 238, 245-46, 53 P.3d 26 (2002).

¶12 Our conclusion that admission of the improper evidence was harmless rests largely on the fact that, here, the trial court was the trier of fact. The trial court made specific findings of fact and five conclusions of law to support its guilty verdicts. None of these findings of fact reference or rely in any way on the inadmissible evidence.[11] In conclusions III and IV, regarding counts II and III, the trial court expressly relied solely on SEH's testimony. The trial court began conclusion III, "That S.E.H.'s account of the road trip to Astoria did in fact describe sexual contact by forcible compulsion." CP at 16. It then began conclusion IV, "As stated in conclusion III., that S.E.H.'s testimony regarding the incident in the truck was credible." CP at 17. Finally, in conclusion V, which involves count IV, the trial court relied on the testimony of SEH and her sister, SH. It began, "That . . . S.E.H.'s description of what occurred on September 17th, 2007, was credible"; and "[t]he testimony of S.H., S.E.H.'s sister[,] is consistent with the account of S.E.H." CP at 17-18. In each of the trial court's conclusions of law, the

---

[11] The dissent asserts that the trial court relied on inadmissible evidence. Dissent at 48. But the dissent does not point to any specific finding of fact supporting the convictions that was based on inadmissible evidence. There were none. The trial court did make findings of fact concerning CM's testimony, but those findings were set out separately and were not connected in any way to the findings of fact and conclusions of law that support each guilty verdict. The dissent cannot show that the trial court relied on inadmissible evidence to support its guilty findings.

trial court expressly articulated the evidence on which it relied to arrive at its conclusions. At no point did the trial court state that it relied on CM's testimony, and it instead relied solely on independently admissible evidence as set forth in its findings of fact to support its guilty verdicts.

¶13 In a jury trial, we do not have a window into the jury's decision-making process, and therefore, we have no way to know if the jury relied on inadmissible evidence. But here, we have the great benefit of detailed findings of fact and conclusions of law that allow us to see precisely what evidence the trial court relied on to reach each of its verdicts. CM's testimony was harmless because substantial, independently admissible evidence supports the trial court's findings, and Gower does not demonstrate that the trial court relied on inadmissible evidence to make essential findings it otherwise would not have made.[12] *See Read*, 147 Wn.2d at 245-46. Accordingly, the admission of improper evidence was harmless because there is no reasonable probability that the error materially affected the trial's outcome. *See Gresham*, 173 Wn.2d at 433.

## II. SUFFICIENCY OF EVIDENCE

¶14 Gower next argues that the State failed to present sufficient evidence to support his convictions. Specifically, he argues that there was insufficient evidence of forcible compulsion to convict him of indecent liberties by forcible compulsion for sexually touching SEH in his truck (count II). He further argues there was insufficient evidence that the sexual contact occurred in Washington to convict him of second degree incest for the same touching (count III). And he finally argues that the State presented insufficient evidence of sexual contact to convict him of indecent liberties by forcible compulsion for spanking SEH in the basement (count IV). We hold that the State presented suffi-

---

[12] Here, despite the presence of the same prior sexual misconduct, the trial court acquitted Gower of counts I, III (greater offense, as charged), and V.

cient, independently admissible evidence to support Gower's convictions on counts II, III and IV.

## A. Standard of Review

¶15 Evidence is sufficient to support a conviction if it permits a reasonable fact finder to find each element of the charged crime beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980). We review a trial court's decision following a bench trial for whether substantial evidence supports any challenged findings of fact and whether the findings of fact support the conclusions of law. *State v. Hovig*, 149 Wn. App. 1, 8, 202 P.3d 318, *review denied*, 166 Wn.2d 1020 (2009). We do not have to decide if we believe that the evidence establishes guilt beyond a reasonable doubt, but rather we must decide if any rational trier of fact could find guilt. *State v. Kilburn*, 151 Wn.2d 36, 57, 84 P.3d 1215 (2004). Gower does not assign error to any of the trial court's findings of fact, making them verities on appeal. *State v. Kaiser*, 161 Wn. App. 705, 724, 254 P.3d 850 (2011). We review questions of law de novo. *Kaiser*, 161 Wn. App. at 724.

## B. Indecent Liberties in Truck (count II)

¶16 Gower argues that the State failed to present sufficient evidence of forcible compulsion to convict him of indecent liberties by forcible compulsion for the sexual contact in his truck. Gower also appears to argue that the trial court's findings of fact do not support its conclusions of law. We disagree.

¶17 The essential elements of indecent liberties by forcible compulsion are that the defendant (1) knowingly causes another person (2) who is not his or her spouse (3) to have sexual contact with him or her or another (4) by forcible compulsion. RCW 9A.44.100(1)(a). " 'Forcible compulsion' means physical force which overcomes resistance, or a threat, express or implied, that places a person in fear

of death or physical injury to herself or himself or another person, or in fear that she or he or another person will be kidnapped." RCW 9A.44.010(6).

¶18 At trial, SEH testified that she suffered regular spankings as punishment for various actions. When SEH was 11 years old, Gower began a long history of spanking SEH as punishment for assorted reasons, roughly once a month, causing her to feel scared, confused, and intimidated. Then in the summer of 2007, Gower sought to punish her again and offered her a choice: She could ride with him in his truck on a trip to Astoria or again be beaten with an object of Gower's choosing. SEH opted for the truck ride. Once in the truck, Gower ordered SEH to comply with three additional punishments: (1) take her breasts out of her shirt one at a time and allow Gower to touch and twist her nipples, (2) remove her pants to allow Gower to rub her clitoris, and (3) insert his finger into her vagina and twist its lips.

¶19 The trial court heard the evidence presented at trial and issued findings of fact. The trial court found, "Between August 1st, 2007, and September 10th, 2007, S.E.H. was told by the defendant that she had to accompany him on a trip to Astoria, OR, or be spanked. S.E.H. had previously been physically struck by the defendant." CP at 14. The trial court also found that "S.E.H. opted to accompany the defendant on the trip to Oregon rather than receive a spanking." CP at 14. The trial court finally found:

> While driving to Oregon, the defendant ordered S.E.H. to remove her pants and underwear. The defendant rubbed S.E.H.'s clitoris. The defendant also grabbed the inside of S.E.H.'s labia and twisted it, penetrating her vagina with his finger. The defendant had S.E.H. place her breast in his hand, and touched her breasts. The defendant's sexual touching of S.E.H. started soon after they began driving the truck in Tacoma.

CP at 14-15.

¶20 The trial court relied on these findings of fact to reach its conclusions of law. Regarding the forcible compulsion element of indecent liberties in Gower's truck, the trial court concluded:

> That S.E.H.'s account of the road trip to Astoria did in fact describe sexual contact by forcible compulsion. While the defendant had a reasonable basis to discipline S.E.H. for dangerous driving, her account that she was given the option of a spanking instead of going on the trip is credible evidence of forcible compulsion. S.E.H. had a reasonable fear of physical injury given the history of being struck by objects if she had not submitted to the sexual contact inside of the truck during the trip to Astoria. S.E.H. had to submit to reasonable discipline, not to sexual contact.

CP at 16. Gower argues that the findings of fact do not support this conclusion of law.[13] We disagree.

¶21 The trial court's findings of fact support the trial court's conclusions of law that Gower committed indecent liberties by forcible compulsion. Gower's threat to spank SEH if she did not ride with him in the truck constituted an express threat that placed SEH "in fear of . . . physical injury to herself." RCW 9A.44.010(6). Gower used this threat to coerce SEH into his truck, where she was isolated and helpless to resist his sexual advances. Based on Gower's past sexual touching of her, SEH had reason to expect similar sexual advances when alone with Gower in the truck. Moreover, Gower's long history of spanking SEH as punishment had an overtly sexual tone: Gower would order SEH to remove her clothing before a spanking and Gower was a member of the local sadomasochism community, in which spanking has a sexual component. Based on these past experiences, SEH knew that if she disobeyed him

---

[13] Gower also argues in passing, without citation to authority, that spanking is not forcible compulsion. But RCW 9A.44.010(6) provides that "forcible compulsion" includes a threat of "physical injury." And RCW 9A.04.110(4)(a) provides that "physical injury" means "physical pain or injury, illness, or an impairment of physical condition." A spanking inflicts physical pain, and thus a threat to spank can constitute "forcible compulsion" under RCW 9A.44.010(6).

by resisting, she would face punishment. Consequently, Gower's threat when forcing SEH into the truck included an implied threat that once in the truck, he would meet any resistance to his sexual advances with physical punishment.

¶22 Thus, when Gower gave SEH the ultimatum to get into the truck for the Astoria trip, her choice was between a naked spanking with sexual overtones or unwanted sexual contact if she went with him in the truck and did not resist. Based on her long history as a victim of routine physical abuse and the atmosphere of intimidation Gower created, SEH could not expect that resisting Gower would invite any other result than the usual punishment. Gower's express and implied threats were the means by which he forced sexual contact with SEH in his truck, which constituted indecent liberties by forcible compulsion. Accordingly, we affirm Gower's conviction on count II.

### C. Second Degree Incest (Count III)

¶23 Gower next argues that the State failed to present sufficient evidence to convict him of second degree incest because substantial evidence does not support the finding that the sexual contact in Gower's truck occurred in Washington. We disagree.

¶24 The State bears the burden to prove that jurisdiction properly lies in state court. *State v. L.J.M.*, 129 Wn.2d 386, 392, 918 P.2d 898 (1996). Washington courts have jurisdiction over crimes that occur, in whole or in part, in Washington. RCW 9A.04.030.

¶25 The trial court found, "The defendant's sexual touching of S.E.H. started soon after they began driving the truck in Tacoma, and occurred throughout the trip to Astoria. The sexual contact occurred while the truck was in motion on the road in both Washington and Oregon." CP at 15.

¶26 As noted, Gower has not challenged the trial court's findings of fact. This would ordinarily make the

above findings verities on appeal. *See Kaiser*, 161 Wn. App. at 724. But we may consider an appellant's arguments despite no formal assignment of error when the arguments are sufficiently briefed and the record is adequate for us to fairly decide the issue. *State v. Breitung*, 155 Wn. App. 606, 619, 230 P.3d 614 (2010), *aff'd in part, rev'd in part on other grounds*, 173 Wn.2d 393, 267 P.3d 1012 (2011). Because Gower sufficiently argues this issue in his briefing and the record is adequate, we exercise our discretion to consider this issue. We review the trial court's findings of fact on this point for substantial evidence. *Hovig*, 149 Wn. App. at 8.

¶27 We hold that substantial, independently admissible evidence supports the trial court's finding that Gower's sexual contact "occurred while the truck was in motion on the road in both Washington and Oregon." CP at 15. SEH testified that the sexual contact in Gower's truck began in the morning after the truck left, as soon as the truck's heater warmed the cab. We take judicial notice that Tacoma is approximately 96 miles driving from the Oregon border[14] by the shortest route to Astoria and that Gower's truck heater would have warmed the cab before reaching Oregon. SEH's testimony thus provided substantial evidence that Gower's sexual contact with her occurred in Washington.

¶28 As such, sufficient independently admissible evidence supports the trial court's finding of fact that Gower's sexual contact occurred in Washington, and these findings support the trial court's conclusion that the sexual contact occurred in Washington.

---

[14] The state highway mileage chart indicates that it is 96 miles from Tacoma to Longview by the shortest route. Washington State Department of Transportation, Highway Mileage Chart, http://www.wsdot.wa.gov/NR/rdonlyres/3DF02773-6DC9-47A6-A421-7EDE06A2B631/0/MileageChart2006.pdf (last visited Oct. 19, 2012). Longview is on the Oregon border and en route to Astoria by the shortest route.

## D. Indecent Liberties by Forcible Compulsion for Spanking (count IV)

¶29 Gower finally argues that there was insufficient evidence of sexual contact to convict him of indecent liberties by forcible compulsion for the spanking he gave SEH in the basement. We disagree.

¶30 One element of indecent liberties by forcible compulsion is sexual contact. RCW 9A.44.100(1). " 'Sexual contact' means any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party." RCW 9A.44.010(2). The buttocks are an intimate part for the purposes of this definition. *In re Welfare of Adams*, 24 Wn. App. 517, 519, 601 P.2d 995 (1979).

¶31 The trial court found, "[Gower told] S.E.H. to take her pants and underwear off so she could receive a spanking. [Gower] then spanked S.E.H.'s nude buttocks with a coat hanger, while telling her, '[A]re we having fun yet?' " CP at 15. This finding is unchallenged on appeal and is therefore a verity. *See Kaiser*, 161 Wn. App. at 724. Based on this finding, the trial court concluded, "[Gower] obtained sexual contact by compelling S.E.H. to remove her clothing and expose her lower body by the use of force or threat of the use of force." CP at 17.

¶32 The trial court also found that Gower was involved in the sadomasochism community, that "normal things in life do not satisfy" the desires of sadomasochism practitioners, and that there is a sexual component to spanking within that community. CP at 14. Gower argues that because there was no testimony that Gower had a sexual motivation for this spanking or that he had engaged in spanking for sexual gratification in the past, the evidence was insufficient to show sexual contact. In other words, Gower argues that there was no direct evidence that the spanking had a sexual component. But a fact finder may

consider circumstantial evidence to infer sexual gratification beyond a reasonable doubt. *See State v. Wilson*, 56 Wn. App. 63, 68, 782 P.2d 224 (1989), *review denied*, 114 Wn.2d 1010 (1990).

¶33 Here, Gower made a 17-year-old girl remove her pants and underwear and asked her, "[A]re we having fun yet?" as he spanked her nude buttocks with a coat hanger. CP at 15. Moreover, Gower was a member of the sadomasochism community, where spankings have a sexual component. Gower voices no objection to the evidence underlying these findings. Thus, the manner in which Gower spanked the 17-year-old girl who was nude from the waist down, and the evidence that he was a member of a sexual fetish community in which spanking has a sexual component, provided sufficient independently admissible circumstantial evidence from which a rational fact finder could conclude beyond a reasonable doubt that Gower spanked SEH for sexual gratification.

### III. Cumulative Error

¶34 Finally, Gower asserts that cumulative error deprived him of a fair trial. We conclude that the cumulative error doctrine does not apply.

¶35 Under the cumulative error doctrine, we may reverse a defendant's conviction when the combined effect of trial errors effectively deny the defendant's right to a fair trial, even if each error alone would be harmless. *State v. Weber*, 159 Wn.2d 252, 279, 149 P.3d 646 (2006), *cert. denied*, 551 U.S. 1137 (2007). Here, Gower demonstrates only that it was error to admit CM's testimony under RCW 10.58.090. Gower, however, does not show that this error combined with others to deny him a fair trial. Therefore, the cumulative error doctrine does not apply.

¶36 We affirm counts II, III, and IV because independently admissible evidence supports those convictions.

Hunt, J., concurs.

¶37 WORSWICK, C.J. (concurring in part and dissenting in part) — I concur with the majority that sufficient evidence supports all of Gower's convictions. But I dissent from the majority as to harmless error. The trial court admitted evidence of Gower's prior sex offenses against CM under RCW 10.58.090 but excluded it under ER 404(b). The trial court therefore admitted the evidence to show Gower's propensity to commit sex crimes. Under such circumstances, I would reverse Gower's convictions and remand for a new trial. I accordingly dissent from the majority's decision to affirm Gower's convictions on the basis that CM's testimony was harmless.

¶38 The instant case turned largely on a credibility contest between Gower and SEH. SEH testified as to Gower's alleged crimes against her. And Gower testified that although he made SEH ride in his truck, there was no sexual contact and he never spanked her in the basement. There were no eyewitnesses to either crime, aside from SEH, and there was no conclusive physical evidence.

¶39 Under these facts, CM's testimony was not harmless. Based on CM's testimony, the trial court found that Gower had spanked CM and left bruises, had exposed himself to her and made her expose herself to him, had made her watch pornography, had masturbated in front of her, and had digitally penetrated her. And because the trial court ruled it inadmissible under ER 404(b), the trial court could not have admitted CM's testimony for any purpose *except* to show Gower's character as a sex offender who molested his daughter, and to show that he acted in conformity with that character by sexually assaulting his stepdaughter. The inference that Gower engaged in sexual misconduct with SEH because of a propensity to sexually assault his daughters was highly prejudicial to Gower. This evidence was reasonably likely to have affected the verdict and I would hold that it was not harmless.

¶40 The majority, in holding to the contrary, relies on *State v. Ryan*, 48 Wn.2d 304, 308, 293 P.2d 399 (1956), and

*State v. Read*, 147 Wn.2d 238, 245-46, 53 P.3d 26 (2002). But I respectfully submit that neither case adequately supports the majority's conclusion.

¶41 The majority relies on *Ryan* for the proposition that " '[w]here a case is heard by a judge without a jury, a new trial should not be granted for error in the admission of evidence, if there remains substantial admissible evidence to support the findings, unless it appears that the findings are based on the evidence which should have been excluded.' " Majority at 38-39 (alteration in original) (quoting 48 Wn.2d at 308). But the majority applies this holding much more broadly than the facts of *Ryan* warrant.

¶42 In *Ryan*, the trial judge did not *make findings* relying on inadmissible evidence. 48 Wn.2d at 308. And the trial judge ruled with respect to the challenged items of hearsay admitted at trial, " 'I am going to strike them from the testimony and not consider them.' " 48 Wn.2d at 308. Our Supreme Court held, "We must accept the trial judge's statement that he disregarded the challenged testimony entirely." 48 Wn.2d at 308. Thus, unlike here, the trial judge explicitly declined to consider the inadmissible evidence, making *Ryan* distinguishable.

¶43 *Read* is similarly inapposite. *Read* relied on *State v. Miles*, 77 Wn.2d 593, 601, 464 P.2d 723 (1970), for the proposition that "we presume the trial judge did not consider inadmissible evidence in rendering the verdict." 147 Wn.2d at 244. But *Read* noted that the *Miles* presumption is rebuttable "by showing that the verdict is not supported by sufficient admissible evidence, or the trial court relied on the inadmissible evidence to make essential findings that it otherwise would not have made." 147 Wn.2d at 245-46. *Read* concluded that sufficient admissible evidence supported Read's conviction and that Read had not shown that the trial judge relied on the inadmissible evidence to make essential findings. 147 Wn.2d at 246.

¶44 The *Read* dissent disagreed with this conclusion, however, opining, "Where, as here, a trial judge openly

refutes the presumption he did not consider inadmissible evidence, we cannot conclude otherwise." 147 Wn.2d at 258 (Sanders, J., dissenting). I would hold that here, the trial judge's inclusion of CM's testimony in the findings of fact openly refuted the presumption that the trial judge did not consider this inadmissible evidence.

¶45 "When a judge is required to make findings of fact in a jury-waived case, he not only indicates his findings on the issuable facts, but he sets forth the very basis upon which his conclusions of law must rest." Gunnar H. Nordbye, *Improvements in Statement of Findings of Fact and Conclusions of Law*, 1 F.R.D. 25, 25 (1940). The findings of fact form the basis for the conclusions of law whether explicitly referenced or not. If the Court of Appeals retrospectively determines that the trial court must have ignored certain of its own findings of fact, the Court of Appeals steps out of its role as a review tribunal and becomes a fact finder itself, effectively amending the findings of fact to correct the trial court's error. I respectfully submit that this is not our role.[15]

¶46 Because the trial court issued findings of fact based on CM's testimony, and because RCW 10.58.090 directed the trial court to consider such facts to show Gower's propensity to commit sex offenses, I would hold that the admission of CM's testimony under RCW 10.58.090 was reversible error, requiring a new trial. I accordingly dissent from the majority's decision to affirm Gower's convictions.

¶47 I concur in part and dissent in part.

Review granted at 177 Wn.2d 1007 (2013).

---

[15] The majority also suggests that Gower was not prejudiced because the trial court acquitted him on some counts. I disagree. The question is whether the error was reasonably likely to have affected the verdict. It does not follow that simply because the trial court acquitted Gower on some counts that the court would have reached the same verdict in the absence of the inadmissible evidence.