IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | |
| | ) | No. 34418-5-III |
| JULIE ANN CLARK, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| DARRYL G. CLARK, | ) | |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Darryl Clark appeals from the trial court's division of property following the dissolution of the marriage between Mr. Clark and Dr. Julie Clark. We reject most of the appellant's contentions and affirm the property distribution. We remand for redetermination of the percentage of postsecondary support that Mr. Clark will be required to pay.

FACTS

The Clarks married in 1989 and separated February 5, 2014. At the time of separation, Dr. Clark maintained a veterinary practice that Mr. Clark managed. The couple also owned a coffee shop adjacent to the clinic. Mr. Clark was the sole manager

and operator of that business. Dr. Clark worked less than full time in order to be home with the couple's children.

Mr. Clark entered into a romantic relationship with one of the other veterinarians working in the clinic. He allegedly spent office funds in facilitating that relationship. Dr. Clark found out about the affair in late January 2014. After consulting with counsel, she fired the veterinarian in April and fired Mr. Clark from his position two months later. Dr. Clark then filed for dissolution and took over management of the business.

The matter proceeded to trial, with financial issues constituting the major area of dispute. Mr. Clark was unemployed at the time of trial. During the last two years of the marriage, he had earned more than $80,000 each year. Dr. Clark presented expert testimony at trial that an office manager should earn between $48,000 and $60,000 per year. The trial court found that Mr. Clark was voluntarily unemployed and imputed income to him of $50,000 annually. However, that amount would increase to $60,000 if he still remained unemployed six months after the ruling. Using that income, the court calculated that Mr. Clark owed 25.8 percent of the couple's child support obligation.

By the time of trial, the couple's oldest child had turned 18. The court assigned Mr. Clark the responsibility of paying 32 percent of the child's postsecondary education expenses. Mr. Clark had received temporary maintenance of $62,000, pending trial, but the court declined to award further maintenance.

During trial, Dr. Clark introduced evidence of the affair and argued that Mr. Clark had wasted community assets. The court permitted the evidence at trial, finding that it was relevant on the date of separation, allocation of the business assets, and on the issue of breach of fiduciary duty. The court would not allow the evidence to be used to criticize Mr. Clark and stated that the evidence addressed only "the pure business circumstances and how to allocate that business. That's the way I'm looking at it." Report of Proceedings (RP) at 58. In response to a relevancy objection during Mr. Clark's testimony, the court reiterated that "I'm not looking at it as fault. I'm looking at it as . . . using the community resources." RP at 633.

Trial began on a Monday. On the immediately preceding Friday, Mr. Clark received an offer to purchase the veterinary clinic from the new employer of his girlfriend. The veterinarian who made the offer was listed as a potential witness for Mr. Clark. During cross-examination of Dr. Clark's valuation expert, Mr. Clark asked if he was aware of the offer to purchase the practice. Dr. Clark objected, challenging the timeliness of the offer and expressing doubt that it was a good faith offer. The trial court decided to "foreclose the admission of this offer and witness testimony about it" in light of the length of time the trial had been pending, the discovery and trial preparation theories of the parties, the effort that would be needed to address the topic, and the fact that the case had previously been continued over Dr. Clark's objection. RP at 268-269. Mr. Clark did not object to the ruling or make any offer of proof concerning it. He was

allowed to ask Dr. Clark's expert if any purchase offer would have affected the expert's valuation. He indicated that an offer could potentially do so, but extensive analysis would be required.

The parties offered differing values for the veterinary business, with Dr. Clark's expert opining it was worth $241,000 and Mr. Clark's expert valuing it at $406,000. The court selected a value of $265,000. The judge awarded the business to Dr. Clark and required an equalization payment (after credit for other expenses paid by the doctor) of $92,084.58 to Mr. Clark. The court determined that it was unrealistic to divide the business or to continue a business relationship between the couple.

Mr. Clark timely appealed to this court. A panel considered the case without argument.

## ANALYSIS

Mr. Clark raises several issues that we address in five categories. In order, we consider first his contention that the trial court erred in calculating his income and in setting child support, including the percentage of postsecondary education support. We then consider his request for maintenance, followed by his challenges to the admission of evidence concerning the affair and exclusion of the offer to purchase. Finally, we address his challenges to the property distribution.

4

No. 34418-5-III
*In re the Marriage of Clark*

*Income and Support Obligations*

The support obligations all flow from the income calculation. Mr. Clark argues the court wrongly imputed income to him, with the resulting support obligations necessarily being incorrect. We conclude that the income calculation and monthly support obligations were correct, but agree with the parties that the postsecondary support for the couple's oldest child needs to be corrected.

An overarching principle of family law is that trial courts are accorded great discretion in domestic matters due to the need for finality and certainty. *E.g.*, *In re Marriage of Landry*, 103 Wn.2d 807, 809, 699 P.2d 214 (1985). Appellate courts thus discourage tinkering with trial court rulings. *Id.* The standards governing review of the issues presented in this appeal reflect this policy.

Child support is set by statute with the support obligation divided proportionately within the parents' respective income levels. RCW 26.19.001, .080(1). This court reviews child support orders for an abuse of discretion. *In re Marriage of Griffin*, 114 Wn.2d 772, 776, 791 P.2d 519 (1990). Discretion is abused when it is exercised on untenable grounds or for untenable reasons. *In re Marriage of Littlefield*, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997). Discretion also is abused when the court uses an incorrect legal standard. *State v. Rundquist*, 79 Wn. App. 786, 793, 905 P.2d 922 (1995). Substantial evidence must support the trial court's factual findings. *In re Parentage of Goude*, 152 Wn. App. 784, 790, 219 P.3d 717 (2009). This court will not substitute its

judgment for trial court judgments if the record shows the court considered all relevant factors and the award is not unreasonable under the circumstances. *Griffin*, 114 Wn.2d at 776.

When calculating the child support obligation, the court begins by considering all "income and resources of each parent's household." RCW 26.19.071(1). "Income" is not defined in the statute, but the statute does explain various sources of gross income that either must be considered (RCW 26.19.071(3)) or not considered (RCW 26.19.071(4)). For those without current income, RCW 26.19.071 states in relevant part:

> (6) **Imputation of income.** The court shall impute income to a parent when the parent is voluntarily unemployed or voluntarily underemployed. . . . In the absence of records of a parent's actual earnings, the court shall impute a parent's income in the following order of priority:
> (a) Full-time earnings at the current rate of pay;
> (b) Full-time earnings at the historical rate of pay based on reliable information, such as employment security department data;
> (c) Full-time earnings at a past rate of pay where information is incomplete or sporadic;
> (d) Full-time earnings at minimum wage in the jurisdiction where the parent resides if the parent has a recent history of minimum wage earnings, is recently coming off public assistance, aged, blind, or disabled assistance benefits, pregnant women assistance benefits, essential needs and housing support, supplemental security income, or disability, has recently been released from incarceration, or is a high school student;
> (e) Median net monthly income of year-round full-time workers.

A court's decision on imputation of income due to voluntary underemployment is reviewed for abuse of discretion. *In re Marriage of Wright*, 78 Wn. App. 230, 234, 896 P.2d 735 (1995).

6

Here, the trial court imputed income of $50,000 (rising to $60,000) based on expert testimony and Mr. Clark's income history. RCW 26.19.071(6)(b); Clerk's Papers (CP) at 424-425.[1] The court accepted the expert's views concerning market rate wages for someone of Mr. Clark's background rather than apply the more substantial recent earnings in the family businesses. This constituted a benefit to Mr. Clark. This was a tenable, and therefore sufficient, basis for imputing the income. The court did not err in imputing an income figure near the bottom of the range of the expert testimony.

Accordingly, there was no abuse of discretion in setting Mr. Clark's income nor in calculating the respective income ratios of the parties. Mr. Clark was responsible for 25.8 percent of the child support and Dr. Clark was responsible for the remaining 74.2 percent. The monthly support for each child was properly calculated using these ratios.

Mr. Clark argues, and Dr. Clark agrees, that the trial court did err, however, in assigning each parent 32 percent of the eldest child's postsecondary support obligation. It has previously been held that although the child support tables are advisory in the postsecondary support context, "postsecondary support must be apportioned according to the net income of the parents as determined under the chapter." *In re Marriage of*

---

[1] Mr. Clark emphasizes that the court stated in its oral remarks that the imputation factors of RCW 26.19.071(6)(a)-(d) did not apply. However, the court did not incorporate its oral remarks into the written findings, so the remarks are not binding. *State v. Kull*, 155 Wn.2d 80, 88, 118 P.3d 307 (2005). The written findings clearly show use of RCW 26.19.071(6)(b).

*Daubert*, 124 Wn. App. 483, 505, 99 P.3d 401 (2004), *abrogated on other grounds by McCausland v. McCausland*, 159 Wn.2d 607, 152 P.3d 1013 (2007). *Accord In re Marriage of Newell*, 117 Wn. App. 711, 720, 72 P.3d 1130 (2003).

We remand the postsecondary support obligation to the trial court. We affirm the income imputation and the monthly support obligation.

*Spousal Maintenance*

Mr. Clark next argues that the trial court erred in not continuing spousal maintenance in light of the long term marriage and his contributions to Dr. Clark's career. The trial court properly applied the statutory considerations and did not abuse its discretion in declining to award spousal maintenance.

A request for maintenance is controlled by RCW 26.09.090. Its nonexclusive list of factors to be considered includes:

> (a)     The financial resources of the party seeking maintenance, including separate or community property apportioned to him or her, and his or her ability to meet his or her needs independently . . . ;
> (b)     The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find employment appropriate to his or her skill, interests, style of life, and other attendant circumstances;
> (c)     The standard of living established during the marriage . . . ;
> (d)     The duration of the marriage . . . ;
> (e)     The age, physical and emotional condition, and financial obligations of the spouse or domestic partner seeking maintenance; and
> (f)     The ability of the spouse or domestic partner from whom maintenance is sought to meet his or her needs and financial obligations while meeting those of the spouse or domestic partner seeking maintenance.

The purpose of maintenance is to support a spouse until he or she is able to become self-supporting. *In re Marriage of Luckey*, 73 Wn. App. 201, 209, 868 P.2d 189 (1994). There is no right to spousal maintenance in Washington, but the denial of maintenance is reviewed for abuse of discretion. *Friedlander v. Friedlander*, 80 Wn.2d 293, 297-298, 494 P.2d 208 (1972). Trial courts must consider the statutory factors of RCW 26.09.090. *In re Marriage of Williams*, 84 Wn. App. 263, 267-268, 927 P.2d 679 (1996). However, findings regarding the statutory factors are not necessary as long as it is clear that the court considered them. *In re Marriage of Mansour*, 126 Wn. App. 1, 16, 106 P.3d 768 (2004).

Here, the record reflects that the trial court considered all of the statutory factors and expressly entered findings on each of them. CP at 421-423. Mr. Clark's arguments take issue with the court's conclusions following consideration of these factors, but he is unpersuasive since the court was not required to reach any particular conclusion. He also contends that it was unfair for the court to consider that he could use his transfer payment for living expenses, citing to *Marriage of Stenshoel*, 72 Wn. App. 800, 866 P.2d 635 (1993). That case is not apropos since it addresses a limitation on the use of equalization payments in the context of back child support.

Mr. Clark fails to establish any abuse of the trial court's discretion.

*Evidence of Marital Misconduct*

Mr. Clark next argues that the trial court erred in admitting and considering

evidence of his affair. The trial court carefully circumscribed its consideration of this

misconduct evidence. Mr. Clark cannot establish any abuse of discretion.

Trial court evidentiary rulings are reviewed for manifest abuse of discretion. *State

v. Luvene*, 127 Wn.2d 690, 706-707, 903 P.2d 960 (1995). In a bench trial, judges are

presumed to follow the law and to consider evidence solely for proper purposes. *State v.

Adams*, 91 Wn.2d 86, 93, 586 P.2d 1168 (1978); *State v. Miles*, 77 Wn.2d 593, 601, 464

P.2d 723 (1970); *State v. Bell*, 59 Wn.2d 338, 360, 368 P.2d 177 (1962).

By statute, courts are not to consider "marital misconduct" when dividing property

or ordering spousal maintenance. RCW 26.09.080, .090. However, while marital

misconduct is not an appropriate consideration, a trial court is permitted to consider

conduct that causes the dissipation of marital assets. *E.g.*, *In re Marriage of White*, 105

Wn. App. 545, 551, 20 P.3d 481 (2001) (citing authorities); *In re Marriage of Steadman*,

63 Wn. App. 523, 527-528, 821 P.2d 59 (1991) (holding that the "marital misconduct"

described by the statute is directed to misconduct against a spouse and does not apply to

"gross fiscal improvidence" or to "the squandering of marital assets"); *In re Marriage of

Clark*, 13 Wn. App. 805, 808-809, 538 P.2d 145 (1975) (husband's drinking was relevant

to dissipation of assets).

10

Here, the trial court carefully limited use of the marital affair evidence. The judge told the parties that he would only consider the evidence for proper purposes and the record supports that he kept that promise. The evidence was relevant for Dr. Clark's attempt to prove that Mr. Clark wasted community assets and had a negative impact on the business. *White*, 105 Wn. App. at 551. The court entered written findings that mention the affair as part of the historical facts concerning the development of the business and the break-up of the marriage. CP at 427. This was a proper use of the evidence. *Steadman*, 63 Wn. App. at 527-528. The fact that Dr. Clark was unable to show any significant waste of community or business assets does not mean that the attempt to do so was improper or that the judge was thereby prejudiced. There simply is no indication in the record suggesting that the court used the affair in assigning fault to Mr. Clark.

Mr. Clark has not overcome the presumption that the trial judge considered the evidence only for proper purposes. He, thus, has failed to establish any prejudicial error on this point.

*Offer to Purchase Business*

Mr. Clark next argues that the court erred in excluding testimony concerning the offer to buy the practice made on the eve of trial. Mr. Clark has not preserved this issue, but it also was no more than harmless error.

A trial court's decision to exclude untimely evidence is reviewed for an abuse of discretion, subject to the use of the *Burnet*[2] factors. *Keck v. Collins*, 184 Wn.2d 358, 368, 357 P.3d 1080 (2015). The trial court has "considerable discretion" in allowing a party to develop and present evidence at trial. *In re Marriage of Zigler*, 154 Wn. App. 803, 814, 226 P.3d 202 (2010). The court similarly has great discretion in the way it manages its courtroom, ranging from controlling the conduct of the parties to the setting of the calendar. *Zigler*, 154 Wn. App. at 814-816 (managing courtroom); *State ex rel. Sperry v. Super. Ct. for Walla Walla County*, 41 Wn.2d 670, 671, 251 P.2d 164 (1952) (managing calendar).

*Burnet* and *Keck* are part of a series of cases involving exclusion of evidence imposed as a sanction for violation of the rules governing pretrial discovery. Under *Burnet*, before imposing discovery sanctions such as dismissal, default, or exclusion of testimony, the court must presume that a late-disclosed witness will be allowed to testify absent finding (1) the opposing party's willful violation of the court's discovery orders, (2) the violation substantially prejudiced the opposing party, and (3) consider, on the record, if lesser sanctions would be insufficient. *Burnet*, 131 Wn.2d at 494. The *Keck* majority determined that the *Burnet* test also should be applied to untimely affidavits submitted in response to a summary judgment motion. 184 Wn.2d at 369.

---

[2] *Burnet v. Spokane Ambulance*, 131 Wn.2d 484, 494, 933 P.2d 1036 (1997).

Whether or not the exclusion of the recently received offer should be classified as a trial management issue[3] or as a discovery sanction is a close question. For two reasons, we need not decide that issue. The primary reason is that the issue was not preserved for appeal. After hearing argument on Dr. Clark's request to exclude the untimely evidence, the court granted the request and stated that much effort had been put into preparing for trial and that injecting new evidence would disrupt the trial by requiring additional discovery and expert analysis. RP at 268-269. Mr. Clark's counsel responded: "Your Honor, I understand the Court's ruling in this regard." There was no objection from Mr. Clark.[4]

In this circumstance, any error was not preserved. It is well settled that objections to evidentiary rulings must be raised at trial so that the trial judge has the opportunity to correct a mistake. *State v. Guloy*, 104 Wn.2d 412, 421-422, 705 P.2d 1182 (1985). As a corollary of that doctrine, a party is limited on appeal to arguing only the specific objections that were raised to the trial court. *Id.* at 422. RAP 2.5(a) states that same

---

[3] The three concurring justices in *Keck* did not believe that exclusion of untimely evidence presented a *Burnet* discovery issue. 184 Wn.2d at 374-375 (Gonzalez, J., concurring).

[4] There also was no offer of proof made concerning what evidence Mr. Clark actually wanted to put before the court concerning this offer. No details were provided about the offer, nor was there any other proposed use of the evidence other than questioning the valuation experts. Since the trial judge shut down the entire area of inquiry, it was incumbent on Mr. Clark to make an offer of proof if he desired to do more with the information than the single question he posed to Mr. Carlson.

13

general rule on appeal—issues and arguments that were not presented at trial will not be considered on appeal.

That is the situation here. There was no objection, nor any contention that the law governing discovery violations was implicated. A timely and proper objection would have permitted the trial court to consider the topic and, perhaps, reconsider the decision.

But, in addition to not being preserved, any error also would have been harmless given the testimony of the experts from both sides. Mr. Clark's expert, Scott Martin, testified that he would look at offers to purchase the business made within five years of the valuation period, but "until a transaction actually consummates, we wouldn't give it weight necessarily in our valuation analysis." RP at 319. If an offer was significantly different from his valuation, Mr. Martin would want to know why—did the offeror have the same information he did, or would the offeror be acquiring some other benefit from the transaction? RP at 319-320. In other words, while a historic purchase offer would have some interest for the business evaluator, it likely would not factor into the final equation. Mr. Clark's counsel also asked Dr. Clark's expert, Todd Carlson, about the effect of a purchase offer on his evaluation. Mr. Carlson testified that he might consider the offer if he understood it well and had subjected it to significant analysis. RP at 269. Both experts testified that they would decide how much weight, if any, to give an offer. RP at 269, 319.

In sum, while a pending offer would be of some interest to the two valuation experts, neither of them would place much weight on it, even if they had sufficient time and information to evaluate the basis for the offer. The excluded evidence was not of great moment and did not impact the expert valuations. Any error was harmless.

This issue was not preserved. If there was any error, it also was harmless. For both reasons, appellant has not established any prejudicial error.

*Property Distribution*

The final issue presented in this appeal is a contention that the trial court erroneously awarded the family business to Dr. Clark rather than to Mr. Clark. As with many of the previous rulings, we discern no abuse of discretion.

This court reviews a property division award for abuse of discretion. *In re Marriage of Muhammad*, 153 Wn.2d 795, 803, 108 P.3d 779 (2005). A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons. *Id.* The trial court is "in the best position to assess the assets and liabilities of the parties" and to determine what constitutes an equitable outcome. *In re Marriage of Brewer*, 137 Wn.2d 756, 769, 976 P.2d 102 (1999). Fairness under the circumstances is required rather than mathematical precision. *In re Marriage of Larson*, 178 Wn. App. 133, 138, 313 P.3d 1228 (2013).

Under this test, we are not in a position to say that the trial court erred when it determined an equitable outcome by awarding the business to Dr. Clark and providing an

equitable transfer payment to Mr. Clark. *See Brewer*, 137 Wn.2d at 769. It also made the most sense to award the business to Dr. Clark since it was her expertise that was offered to the public at the veterinary clinic. If the clinic had been awarded to Mr. Clark, he would have had to both buy out Dr. Clark's share of the business and replace her with another veterinarian. The disruption to the business was minimized by changing the office's administrator rather than the office's service provider. In addition, Dr. Clark would then have had to start her practice over and would have been in competition with the clinic. In terms of looking at the business as an ongoing concern, change of management was the least disruptive course of business.

The court properly exercised its discretion and arrived at a just and equitable division of property when it considered the valuation expert testimony, and other evidence admitted at trial, before deciding to award the business to Dr. Clark and require her to buy out Mr. Clark's share. *See Larson*, 178 Wn. App. at 138; *Brewer*, 137 Wn.2d at 769. While another approach was possible, it cannot be said that the trial court's decision was untenable.

There was no abuse of the court's considerable discretion in awarding the veterinary clinic to the veterinarian.

We affirm all of the trial court's judgment other than the postsecondary support obligation. The matter is remanded for further proceedings on that topic.

No. 34418-5-III
*In re the Marriage of Clark*

Affirmed and remanded.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Fearing, C.J.

_____
Pennell, J.

17