[No. 45158. En Banc. November 22, 1978.]

THE STATE OF WASHINGTON, *Respondent,* v. FRANK HENRY ADAMS, *Appellant.*

*Richard A. Hansen* of *Seattle–King County Public Defender,* for appellant.

*Christopher T. Bayley, Prosecuting Attorney,* and *Marilyn G. Showalter, Deputy,* for respondent.

HAMILTON, J.—Appellant challenges his conviction of robbery while armed with a deadly weapon. The sole issue raised by his appeal is whether he was denied effective assistance of counsel as guaranteed by the sixth amendment to the United States Constitution.

We affirm appellant's conviction.

The facts that led up to appellant's trial and conviction on the robbery charge may be summarized as follows: On the evening of February 13, 1974, two black men held up the Western Union office in downtown Seattle. Three employees were working when the robbery occurred. The robbers ordered the employees into the ladies' lounge, taped their hands and mouths, and made them lie on the floor. Then, two of the employees were taken, one at a time, to their safes, which they were ordered to open. The black men then fled with approximately $4,000.

On the evening of the robbery, two of the Western Union employees were able to give the Seattle police a general description of both men. The taller of the two suspects was described as being approximately 6 feet tall, slender to medium build. Neither employee could recall whether the taller man had any facial hair. One employee remembered the taller one had a facial scar but was uncertain about its location.

Six days after the robbery, all three employees were shown a photo montage composed of eight black and white mug shots (showing both front and side facial views). One employee, Mr. Gordon Taft, tentatively identified a picture of appellant as being the taller robber. Another employee, Mr. Theodore Kovtunovich, also picked appellant's photo as the taller of the two invaders. Mr. Kovtunovich's selection was not without some hesitation, but appellant's photo was the one he "could most positively identify." The third employee could not identify any of the people in the photo montage.

On March 14, 1974, all three employees attended a lineup consisting of five black men. Both Mr. Taft and Mr. Kovtunovich identified appellant as the taller robber. Once

again, Mr. Taft's identification was tentative, and Mr. Kovtunovich based his lineup identification in part upon his earlier photo identification of appellant. The third employee was again unable to identify anyone.

Based on these identifications, appellant was charged. At his trial, both Mr. Taft and Mr. Kovtunovich were called as witnesses for the State. They testified to the foregoing facts. However, neither of these witnesses could identify appellant in the courtroom using only their memories of the robbery and without reliance upon their earlier out–of–court identifications. The third employee also testified on behalf of the State to the effect that he could not remember what either robber looked like.

The State's case–in–chief was based upon the testimony of Mr. Taft and Mr. Kovtunovich. The other participant was never apprehended, and none of the guns or money was recovered.

Appellant waived his right to a jury trial, and the case was tried to the court. Appellant was represented by Ms. Barbara Durham. She extensively cross–examined both Mr. Taft and Mr. Kovtunovich, focusing upon the degree of certainty of their photo and lineup identifications.

At the close of the State's case–in–chief, appellant's counsel moved for dismissal of the charges for lack of sufficient evidence, emphasizing Mr. Kovtunovich's hesitancy and Mr. Taft's tentativeness. She also pointed out other inconsistencies, such as: the witnesses' failure to recall whether the taller robber had any facial hair; the discrepancy in height between appellant and the original description of the taller robber; and the location of a scar on the taller one's face when compared to the scar on appellant's face. The motion was denied.

Appellant's counsel then put on an alibi defense. This was presented by the testimony of appellant and another witness to the effect that appellant was at a party the entire evening of the robbery.

In her closing argument, defense counsel again attacked the eyewitnesses' identifications of appellant. She reiterated

the inconsistencies and the degree–of–certainty arguments she made earlier. The court, however, found appellant guilty beyond a reasonable doubt.

After the conviction and judgment against him, appellant vacillated on whether to appeal. At times he would be dissatisfied with the judgment against him and would adamantly desire to appeal. However, appellant had also been convicted and sentenced on unrelated charges, and he was being allowed to serve all terms concurrently. He feared that if he appealed this robbery conviction, his sentence might not run concurrently with the other sentences. Thus, while appellant's counsel gave oral notice of appeal at the time of sentencing, it was her understanding that appellant's final decision was not to appeal this case; hence, she did not perfect the appeal within the time limitations.

Because of appellant's evident indecisiveness, he was subsequently granted a hearing on whether to reinstate his appeal. The court found appellant was confused to a point that it could not fairly be said he willingly waived his right of appeal. Accordingly, his appeal was reinstated.

Appellant's basic contentions now are: (1) that we should change the test for determining what constitutes effective assistance of counsel, and (2) that based on a new standard appellant's trial counsel was ineffective, thus giving him a right to a new trial.

We decline to decide whether to adopt a new standard for determining if a criminal defendant received effective assistance of counsel because, based on these facts, we believe appellant *did* receive effective assistance of counsel at his criminal trial under either standard.

The present test used in this state for determining whether a criminal defendant has received effective assistance of counsel is set forth in *State v. Thomas,* 71 Wn.2d 470, 471, 429 P.2d 231 (1967); "After considering the *entire record,* can it be said that the accused was afforded an *effective representation* and a *fair* and *impartial* trial?" (Italics in original.) *Accord, State v. Myers,* 86 Wn.2d 419, 424, 545 P.2d 538 (1976); *State v. Johnson,* 74 Wn.2d 567,

.570, 445 P.2d 726 (1968). Under this standard, a defendant is not guaranteed "'successful assistance of counsel'" (*i.e.,* acquittal). *State v. White,* 81 Wn.2d 223, 225, 500 P.2d 1242 (1972). Our test recognizes that "the method and manner of preparing and presenting a case will vary with different counsel." *State v. Thomas, supra* at 472. In other words, if a defense counsel's trial conduct, which is later complained of, can be characterized as legitimate trial strategy or tactics, it cannot serve as the basis for a claim that a defendant received ineffective assistance of counsel. *See State v. Hess,* 86 Wn.2d 51, 52, 541 P.2d 1222 (1975); *accord, Moran v. Hogan,* 494 F.2d 1220 (1st Cir. 1974); *Robinson v. United States,* 448 F.2d 1255 (8th Cir. 1971).

Recently, there has been a trend in some judicial decisions toward a more "objective" standard for measuring whether an accused has received effective assistance of counsel. The standard is somewhat akin to that used in legal malpractice cases. *See* Finer, *Ineffective Assistance of Counsel,* 58 Cornell L. Rev. 1077, 1079 (1973). There are several different formulations of the projected "objective" standard. The one advocated by appellant is stated in *Beasley v. United States,* 491 F.2d 687, 696 (6th Cir. 1974):

> We hold that the assistance of counsel required under the Sixth Amendment *is counsel reasonably likely to render and rendering reasonably effective assistance.* It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence. Johns v. Perini, 440 F.2d 577, 579 (6th Cir. 1971); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); King v. Beto, 429 F.2d 221, 225 (5th Cir. 1970), cert. denied, 401 U.S. 936, 91 S.Ct. 921, 28 L.Ed.2d 216 (1971); Chalk v. Beto, 429 F.2d 225, 227 (5th Cir. 1970). Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations. Glasser v. United States, 315 U.S.

60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); McMann v. Richardson, 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970).

(Italics ours.) *Accord, Cooper v. Fitzharris,* 551 F.2d 1162, 1166 (9th Cir. 1977). And, under this "objective" test it is apparently no longer necessary to show that an accused was actually prejudiced by a defense counsel's conduct. *Beasley v. United States, supra; Cooper v. Fitzharris, supra.* Even with this standard, however, trial tactics cannot serve as a basis for a claim of inadequate representation, unless these tactics would be considered incompetent by lawyers of ordinary training and skill in the criminal law. *Beasley v. United States, supra.* In Finer, *Ineffective Assistance of Counsel, supra* at 1080, the author, who advocates the adoption of a standard very similar to the one enunciated by the court in *Beasley v. United States, supra,* recognized that these new "objective" standards must allow competent counsel leeway to conduct the defense with his own good judgment:

A defendant is not entitled to perfect counsel, to error-free representation, or to a defense of which no lawyer would doubt the wisdom. Lawyers make mistakes; the practice of law is not a science, and it is easy to second guess lawyers' decisions with the benefit of hindsight. Many criminal defendants in the boredom of prison life have little difficulty in recalling particular actions or omissions of their trial counsel that might have been less advantageous than an alternate course. As a general rule, the relative wisdom or lack thereof of counsel's decisions should not be open for review after conviction. Only when defense counsel's conduct cannot be explained by any tactical or strategic justification which at least some reasonably competent, fairly experienced criminal defense lawyers might agree with or find reasonably debatable, should counsel's performance be considered inadequate. Such a finding of ineffective representation should reverse a defendant's conviction if counsel's conduct created a reasonable possibility of contributing to that conviction.

■ We turn now to appellant's specific charges of incompetence. Appellant first contends that his defense counsel should have moved to suppress the photo and lineup identifications. He argues that the eyewitnesses' testimonies demonstrate how hesitant and tentative these identifications were. He argues further that the photo montage and lineup were unconstitutionally suggestive. We do not agree with appellant. The fact that witnesses are not positive about the identity of the accused only affects the weight, not the admissibility, of the evidence. *State v. Gosby,* 85 Wn.2d 758, 760, 539 P.2d 680 (1975). In addition, we see nothing unduly suggestive about either the photo montage or the lineup procedure. Most of the people in the photo montage had a small amount of facial hair, and some of the people also had facial scars, although none of the scars were in the same location. The photographs were all black and white, and each photo employed the same front and profile format. We believe any motion to suppress this photo montage would have been useless. The lineup procedure, too, seems unassailable. While appellant may have been the only individual in the lineup with a facial scar, his scar does not appear so prominent on his face as would sustain a charge that the lineup was unduly suggestive because of the scar.

Since it is extremely unlikely that the lineup or photo montage evidence would have been suppressible, appellant's counsel did the next best thing: From it, she built a defense using the witnesses' own uncertainty about their identifications of appellant to demonstrate how much room there was for reasonable doubt. For this she cannot be faulted under any standard of effective assistance of counsel. Her conduct is both legitimate trial strategy and recognized by competent criminal trial lawyers.

Appellant next argues that his trial counsel should have made certain objections to conduct and questioning by the prosecutor. He first argues that his counsel should have objected to some leading questions tendered by the prosecutor to both eyewitnesses. There can be little doubt that

the questions now complained of were to some degree leading. But it must be remembered that this was a trial to the court. It can safely be assumed that the trial court judge recognized the questions for what they were and disregarded any improper material produced thereby in reaching a decision. *See State v. Bell,* 59 Wn.2d 338, 368 P.2d 177 (1962). Thus, under our present standard, even if defense counsel's conduct could be criticized as inadequate (and we do not think it can be), it would be harmless error because appellant suffered no actual prejudice. *State v. Myers, supra.* Furthermore, defense counsel was able to correct any misconceptions that might have been produced by the questions in her cross–examination. Thus, even under the "objective" standard, we feel counsel's conduct was reasonably likely to render and rendered reasonably effective assistance, given the facts of this case. Here again we are in an area which is largely controlled by tactical considerations. Defense counsel may have felt she would irritate the trial court judge if she repeatedly interposed objections upon questionable grounds. *See* A. Amsterdam, *Trial Manual 3 for the Defense of Criminal Cases* § 416 (1974). Under either standard of effective assistance of counsel appellant's trial counsel was using her own good judgment. What is said here applies equally to appellant's contentions that his counsel should have objected to the prosecutor's purported limitation of adverse testimony from his own witness and the prosecutor's closing argument, which appellant says contained facts not in evidence.

Finally, appellant charges that his trial counsel was ineffective because she failed to file a formal written notice of appeal. Appellant's own vacillation as to waiver is set forth in the record. In any event, an appropriate remedy for this accusation of incompetence would be reinstatement of appellant's right to appeal. *State v. Sweet,* 90 Wn.2d 282, 581 P.2d 579 (1978). This is precisely what was done.

After examining the entire record in this case, we hold that appellant received effective representation and a fair and impartial trial. And, even though we do not adopt the

"objective" standard advocated here, we are satisfied appellant's trial counsel fully met all requirements thereof.

Appellant's conviction is affirmed.

WRIGHT, C.J., and ROSELLINI, STAFFORD, UTTER, BRACHTENBACH, HOROWITZ, DOLLIVER, and HICKS, JJ., concur.