IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 34109-7-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN MARK HAMILTON, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — John Hamilton appeals from a conviction at bench trial for attempted second degree robbery, arguing that the court permitted improper evidence and applied an incorrect standard in assessing the elements of the crime. We affirm.

FACTS

Mr. Hamilton entered a convenience store that he frequented and argued with the clerk, Ms. K.K. The incident was captured on surveillance video without audio and led to a charge of attempted first degree robbery while armed with a deadly weapon. The two participants related significantly different versions of the encounter at a bench trial in the Spokane County Superior Court.

K.K. is a native Punjabi speaker who speaks little English. She indicated that a man came up to the counter holding a glass bottle and said he was there to do a robbery.

She took off her rings and placed them on the counter, and then fell to the floor trying to protect herself. When the man came around to her side of the counter, she got up and fled the building, running to a next door neighbor. The neighbor testified that K.K. frantically beat on his door and reported a robbery, which he called in to the police. The two returned to the convenience store and saw a man, whom he identified as the defendant, rummaging around. When the man saw the two watching him, he dropped the lottery tickets he was holding and left the building.

Mr. Hamilton told the court that he had previously given K.K. a $400 ring in exchange for $20 worth of store merchandise and had come back to reclaim the ring. He offered $40 for it. When K.K. turned the offer down, he angrily told her she was robbing him by demanding more money. When she fell to the floor, he tried to calm her down, but after she fled he grabbed some lottery tickets in anger, but dropped them when he realized what he had done.

His testimony was undermined by the recording of a telephone call he made while in the jail. In part, that conversation recited Mr. Hamilton stating:

> Well, yeah, we don't want to hear what I'm saying, and laughs. . . . See about audio because audio would be pretty damning. It wouldn't be good. I don't know why they wouldn't have audio, but I hope they don't.

Report of Proceedings (RP) at 268-269.

The court's findings report much of what the judge saw on the video. Those findings indicate that Mr. Hamilton approached the counter holding a glass bottle by the

2

neck upside down. After setting it down on the counter, he again picked it up after the argument began while standing directly in front of K.K. The next finding states that K.K., "who testified that she was in fear for her safety and perplexed by the defendant's actions, lies down on the floor behind the counter in fear and covers her head with her hand." Clerk's Papers (CP) at 82.

Over objection, the detective was allowed to testify to observations he made while reviewing the defendant's actions on the video. The court permitted the testimony due to the detective's experience and training. In response to a concern that the officer's testimony would lead to an expression of an opinion that the defendant was guilty, the court responded:

> Obviously as to whether someone finally commits a crime or not, that is in this case the Court's decision or otherwise the jury's decision, and goes to the ultimate facts. No one can express an opinion about guilt.

RP at 182. During cross-examination, defense counsel encouraged the detective, whom he knew, to be "candid" about the information he was seeking when he interviewed the defendant and asked the detective if he was seeking evidence or "looking for statements from Mr. Hamilton that might incriminate him?" The detective responded:

> Both. I was looking for the truth. And what—His physiological characteristics during of the interview led me to believe that he was doing one of two things: Absolutely lying and hiding something from me, or contemplating not telling me something.

RP at 286-287. There was no objection to the response.

3

The court recessed for two days to review the video and return a decision. The court delivered the verdict in open court, stating the facts it found and the elements of attempted first degree robbery that the judge found proved beyond a reasonable doubt. The court determined that the glass bottle was not wielded as a deadly weapon and determined that attempted first degree robbery was not proved. However, the court concluded that all of the elements of attempted second degree robbery had been established and found Mr. Hamilton guilty of that included offense. RP at 427-434. In his summary of the element of threatened use of force, the court noted several times that K.K. "feared" the defendant and his actions, or that she was "afraid." RP at 431-432.

The court imposed a sentence at the midpoint of the standard range. Findings required by CrR 3.5 and CrR 6.1 were promptly filed. Mr. Hamilton then timely appealed to this court. A panel considered the case without argument.

## ANALYSIS

This appeal presents two issues for our consideration. First, Mr. Hamilton contends that the trial court's observations concerning the victim's "fear" indicated that the court applied a subjective standard to this element. He next argues that the court erred in permitting the detective to express opinions during testimony. We consider the contentions in the order stated.

4

*Consideration of Victim's Fear*

The court's observations considering the victim's fear did not mean that the court misapplied that evidence to the relevant law. The court's oral remarks and the written findings both establish that the court properly applied the evidence to the law.

The crime of robbery is committed when one "unlawfully takes personal property from the person of another or in his or her presence against his or her will by the use or threatened use of immediate force, violence, or fear of injury to that person." RCW 9A.56.190. The "force or fear must be used to obtain or retain possession of the property," and the "degree of force is immaterial." *Id.* The "force or fear" element is adjudged by the reasonable person standard. *State v. Witherspoon*, 180 Wn.2d 875, 884, 329 P.3d 888 (2014). That standard is "whether an ordinary person in the victim's position could reasonably infer a threat of bodily harm from the defendant's acts." *Id.*

"Following a bench trial, appellate review is limited to determining whether substantial evidence supports the findings of fact and, if so, whether the findings support the conclusions of law." *State v. Homan*, 181 Wn.2d 102, 105-106, 330 P.3d 182 (2014) (citing *State v. Stevenson*, 128 Wn. App. 179, 193, 114 P.3d 699 (2005)). "'Substantial evidence' is evidence sufficient to persuade a fair-minded person of the truth of the asserted premise." *Id.* at 106. This court must defer to the finder of fact in resolving conflicting evidence and credibility determinations. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990). The trial court's oral remarks may be used to clarify formal

findings, but they are not themselves findings. *State v. Kingman*, 77 Wn.2d 551, 552, 463 P.2d 638 (1970). Allegedly inconsistent remarks cannot be used to impeach the written findings. *Johnson v. Whitman*, 1 Wn. App. 540, 546, 463 P.2d 207 (1969).

Nothing in the court's written findings suggest it applied a subjective standard in assessing the fear element. Conclusion of law E states that the court found beyond a reasonable doubt that "the taking was against the person's will by the defendant's use or threatened use of immediate force, violence or fear of injury to that person." CP at 84. Nothing there suggests that the conclusion was based on the subjective state of the victim. The only relevant written finding of fact, J, states in its review of the video that K.K. "was in fear for her safety and perplexed by the defendant's actions, lies down on the floor behind the counter in fear and covers her head with her hand." CP at 82.

These notations simply suggest the factual truth that the victim was in fear of the defendant. They do not demonstrate that the court's conclusion of law was based on a misunderstanding of its obligations. None of the parties argued a subjective standard to the court and nothing in the way the case was tried suggested that the victim's actual fear satisfied the element of the crime. Instead, the remarks all seem directed to factually describing the offense.

Nothing in the record suggests the court misapplied the law in its deliberations. Accordingly, this issue is without merit.

6

*Detective's Testimony*

Mr. Hamilton also argues that the trial court erroneously admitted into evidence improper opinion testimony by the detective. There was no error.

Well understood standards govern our review of this claim. With respect to the admission of evidence, trial court judges have great discretion and will be overturned only for manifest abuse of discretion. *State v. Luvene*, 127 Wn.2d 690, 706-707, 903 P.2d 960 (1995). Discretion is abused where it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). Additionally, in a bench trial, it is presumed that the judge followed the law and considered evidence solely for proper purposes. *E.g.*, *State v. Adams*, 91 Wn.2d 86, 93, 586 P.2d 1168 (1978); *State v. Miles*, 77 Wn.2d 593, 601, 464 P.2d 723 (1970); *State v. Bell*, 59 Wn.2d 338, 360, 368 P.2d 177 (1962).

However, it invades the province of the trier-of-fact for a witness to express an opinion that a witness is lying or that a defendant is guilty. *State v. Perez-Valdez*, 172 Wn.2d 808, 817, 265 P.3d 853 (2011) (lying); *State v. Black*, 109 Wn.2d 336, 348, 745 P.2d 12 (1987) (guilt). It is the trier-of-fact's obligation to determine credibility and decide guilt or innocence.

Mr. Hamilton contends that the detective's testimony violated both of these prohibitions. With respect to the answer he solicited on cross-examination with the request that the detective be "candid" about the interview with Mr. Hamilton, the invited

7

error doctrine precludes review of the unchallenged answer. That doctrine prohibits a party from contributing to an error in the trial court and then trying to take advantage of that error on appeal. *E.g.*, *State v. Pam*, 101 Wn.2d 507, 511, 680 P.2d 762 (1984), *overruled on other grounds by State v. Olson*, 126 Wn.2d 315, 893 P.2d 629 (1995); *State v. Studd*, 137 Wn.2d 533, 545-549, 973 P.2d 1049 (1999). Having requested the candid response, and apparently being satisfied at trial with that answer, he cannot now complain that the answer constituted prejudicial error.

Mr. Hamilton also argues that the detective was erroneously allowed to give an indirect opinion that he was guilty by describing actions on the video that were consistent with those of a robber. Although this argument raises legitimate concerns about the proper scope of expert testimony, it is not persuasive in this bench trial. The trial judge expressly told the parties that a witness could not opine on the topic of guilt and that he would be making that determination. RP at 182. The trial judge clearly was aware of the potential dangers of the situation and restricted the testimony to its proper reach. Under these circumstances, there was no danger of any improper opinion testimony swaying the verdict.

Appellant has not overcome the presumption that the trial court considered evidence solely for proper purposes. Accordingly, he has not established error and the conviction is affirmed.

No. 34109-7-III
*State v. Hamilton*

Mr. Hamilton also requests that we not award costs on appeal to the State. In light of Mr. Hamilton's significant debt for child support and previous legal financial obligations, we grant his request and deny costs on appeal.

Affirmed. No costs will be awarded.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Lawrence-Berrey, A.C.J.

_____
Pennell, J.

9