**IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 78717-9-I |
| Respondent, | |
| v. | DIVISION ONE |
| BAUDELIO DAVID ROJAS, | UNPUBLISHED OPINION |
| Appellant. | |

LEACH, J. — A jury convicted Baudelio David Rojas of three counts of domestic violence misdemeanor violation of a no contact order. On appeal, Rojas challenges his conviction claiming he received ineffective assistance of counsel. We agree that his counsel was ineffective. But, Rojas did not suffer prejudice, so we affirm his conviction.

## BACKGROUND

In May 2015, Baudelio David Rojas met Alejandra Quintero-Gonzalez and entered into an "on again/off again relationship." They dated and lived together for more than one year.

In March 2016, King County Superior Court entered a no contact order prohibiting Rojas from contacting Quintero-Gonzalez until 2021. In October 2016, King County Superior Court entered a second no contact order also prohibiting Rojas from contacting Quintero-Gonzalez until 2021. The orders

prohibited Rojas from contacting Quintero-Gonzalez "directly, indirectly, in person or through others, by phone, mail, or electronic means." The orders included the following warning:

> VIOLATION OF THE ORDER IS A CRIMINAL OFFENSE UNDER CHAPTER 26.50 RCW AND WILL SUBJECT A VIOLATOR TO ARREST; ANY ASSAULT, DRIVE-BY SHOOTING, OR RECKLESS ENDANGERMENT THAT IS A VIOLATION OF THIS ORDER IS A FELONY. You can be arrested even if the person protected by this order invites or allows you to violate the order's prohibitions.

Rojas acknowledged receipt of the no contact orders by signing them.

On September 6, 2017, Quintero-Gonzalez hosted a backyard barbeque for her brother, sister-in-law, and friends. Around 11:30 p.m., her friends left. Quintero-Gonzalez, her brother, and her sister-in-law remained in the backyard. Rojas appeared uninvited and told Quintero-Gonzalez that he needed to talk to her. Quintero-Gonzalez said that she did not want to talk with him and asked him to leave. She was concerned that Rojas would upset her brother, so she directed her brother and sister-in-law to go inside the house.

When Quintero-Gonzalez and Rojas were alone in the backyard, she attempted to go inside the house. Then, Rojas grabbed her blouse and pushed her, causing her to break a fingernail and rip her blouse. Rojas threw his cell phone, breaking a piece of glass on Quintero-Gonzalez's door. When she was inside, Quintero-Gonzalez called 911. Rojas fled before the police arrived.

The State charged Rojas with domestic violence felony violation of a court order. The police arrested him and placed him in jail. While in jail, Rojas and Quintero-Gonzalez reconciled and began speaking by phone almost daily. From

September to November 2017, Rojas placed approximately 200 calls to Quintero-Gonzalez. The jail phone system recorded Rojas and Quintero-Gonzalez's calls. During one conversation, Rojas asked Quintero-Gonzalez to lie about her identity. He told her to pose as a recipient of the phone calls named "Christina Gonzalez" to defense counsel, and to the court, in order to make it seem like he had not violated the no contact order.

The phone calls continued until the jail blocked Rojas from calling Quintero-Gonzalez in November 2017. Then Rojas communicated with Quintero-Gonzalez through his friend named "Snakes." Snakes told Quintero-Gonzalez to pretend to be a person named "Christina" and not to show up to court proceedings.

Based on their September 26, October 3, and October 18 calls, the State amended the information and charged Rojas with one count of domestic violence felony violation of a no contact order, three counts of domestic violence misdemeanor violation of a no contact order, and one count of tampering with a witness.

At trial, the court admitted recordings and transcripts of the three phone calls. Sergeant Jennifer Schneider testified the calls were placed using Rojas's personal account number and from his assigned housing location. Quintero-Gonzalez testified that she and Rojas were the individuals conversing on the recordings and she recognized the phone number recorded as hers. She also explained she answered Rojas's calls because she had feelings for him. Each call contained affectionate language. On September 26, she answered the phone

with "Baby," on October 3, she answered the phone with "My sweetie." On October 18, after Quintero-Gonzalez answered the phone, Rojas said, "What's up sweetie."

The State offered the March and October 2016 no contact orders as evidence. Defense counsel objected asserting the no contact orders contained irrelevant and prejudicial information, and that only one of the no contact orders was necessary for conviction. The court found that the admission of both orders would not be unduly prejudicial. It admitted both orders finding them probative of the elements of the crime (whether one or more court order existed and whether there was a violation of one or more court order).

Later, defense counsel asked the court to redact the checkmark next to the term "Post Conviction," redact the term itself, and to redact Finding of Fact 6, which stated, "[t]he court finds that the defendant's relationship to a person protected by this order is an intimate partner (…former/current dating; or former/ current cohabitants)." The court agreed. The court "specifically permitted, at defense request, the orders to be redacted to omit, for example, prior findings by courts of acts of domestic violence."

The jury hung on the count of domestic violence felony violation of a no contact order, convicted Rojas of the three counts of domestic violence misdemeanor violation of a no contact order, and acquitted Rojas of tampering with a witness.

The State retried Rojas for domestic violence felony violation of a no contact order. At the second trial, defense counsel requested redaction of the

two portions of the no contact order the court redacted in the first trial. Defense counsel also requested redaction of Finding of Fact 5, which stated, "Based upon the record, both written and oral, the court finds that the defendant has been charged with, arrested from or convicted of a domestic violence offense. . . and the court issues this Domestic Violence No-Contact Order under Chapter 10.99 RCW to prevent possible reoccurrence of violence." The court granted defense counsel's motion to redact. The jury received no contact orders with the term "Post Conviction" and Finding of Facts 5 and 6 redacted. The jury convicted Rojas of the lesser offense of misdemeanor violation of a court order and affirmatively answered the domestic violence special verdict.

The court sentenced Rojas to a suspended sentence of zero days in jail for the first violation of a court order and 364 days in jail on the remaining three counts of domestic violence misdemeanor violation of a court order.

Shortly after his conviction, Rojas's trial defense counsel realized that they failed to request additional redactions in the first trial. Rojas claims this error allowed jurors to consider unfairly prejudicial evidence.

Rojas appeals his conviction and sentence for three counts of domestic violence misdemeanor violation of a court order from the first trial.

ANALYSIS

Rojas asserts he received ineffective assistance of counsel. The Sixth Amendment of the U.S. Constitution and article I, section 22 of the Washington State Constitution guarantee effective assistance of counsel.[1] "The purpose of

---

[1] State v. Hendrickson, 129 Wn.2d 61, 77, 917 P.2d 563 (1996).

the requirement of effective assistance of counsel is to ensure a fair and impartial trial."[2]  Claims of ineffective assistance of counsel present mixed questions of law and fact that this court reviews de novo.[3]  We examine the entire record to decide whether the appellant received effective representation and a fair trial.[4]

To prevail on an ineffective assistance of counsel claim, a defendant must show (1) that defense counsel's performance fell below an objectively reasonable standard and (2) but for defense counsel's errors, there is a reasonable probability that the result of the trial would have been different.[5]  The failure to satisfy either part of the analysis defeats the claim.[6]

Rojas asserts his defense counsel's conduct fell below an objective standard of reasonable attorney conduct by failing to ask the court to redact Finding of Fact 5 in the first trial and this "failure was not part of any legitimate trial tactic."  We agree.

A defendant alleging ineffective assistance of counsel must overcome "'a strong presumption that counsel's performance was reasonable.'"[7]  Counsel's

---

[2] State v. Thomas, 109 Wn.2d 222, 225, 743 P.2d 816 (1987).
[3] State v. Jones, 183 Wn.2d 327, 338-39, 352 P.3d 776 (2015).
[4] State v. Hicks, 163 Wn.2d 477, 486, 181 P.3d 831 (2008) (quoting State v. Ciskie, 110 Wn.2d 263, 284, 751 P.2d 1165 (1988).
[5] Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).
[6] State v. Kyllo, 166 Wn.2d 856, 862, 215 P.3d 177 (2009); State v. Hendrickson, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).
[7] State v. Grier, 171 Wn.2d 17, 33, 246 P.3d 1260 (2009) (quoting Kyllo, 166 Wn.2d at 862).

performance is not deficient where it can be "'characterized as legitimate trial strategy or tactics.'"[8]

To prove a misdemeanor violation of a no contact order, the State was required to establish that Rojas (1) knew the existence of a no contact order and (2) knowingly violated the restraint provisions of the order that prohibited contact with Quintero-Gonzalez. To prove the domestic violence enhancement, the State was required to establish that Rojas and Quintero-Gonzalez were "members of the same family or household."

Defense counsel did not ask the court to redact Finding of Fact 5, which states, "[t]he court finds that the defendant has been charged with, arrested for or convicted of a domestic violence offense. . . and the court issues this Domestic Violence No-Contact Order under Chapter 10.99 RCW to prevent possible reoccurrence of violence." From Finding of Fact 5, the jury could easily infer a court previously convicted Rojas of a domestic violence offense and issued a no contact order, and that Rojas violated that no contract order. Defense counsel should have requested redaction of Finding of Fact 5, or at a minimum, defense counsel should have requested redaction of the terms "domestic violence" and "domestic violence offense" from Finding of Fact 5. Because defense counsel acknowledged their mistake and moved to redact Finding of Fact 5 during the second trial, their failure to do so during the first trial was not a legitimate trial tactic. Defense counsel's deficient performance fell below an objective standard of reasonableness.

---

[8] Grier, 171 Wn.2d at 33 (quoting Kyllo, 166 Wn.2d at 863); Thomas, 109 Wn.2d at 226.

However, Rojas fails to establish that, but for defense counsel's errors, there is a reasonable probability that the result of the trial would have been different. A defendant establishes prejudice by showing a reasonable probability the outcome of the proceedings would have been different had counsel's performance not been deficient.[9] "A reasonable probability is a probability sufficient to undermine confidence in the outcome."[10] "Trial counsel does not guarantee a successful verdict, and [the trial counsel's] competency is not measured by the result."[11]

Rojas's signatures on the no contact orders demonstrate that he knew of their existence. Rojas called Quintero-Gonzalez from jail and contacted her through Snakes. So, even without Finding of Fact 5, the State easily established Rojas knowingly violated the no contact orders.

Quintero-Gonzalez's testimony that she lived with Rojas for about one year established that she and Rojas were "members of the same family or household." Quintero-Gonzalez's testified that she answered Rojas's calls because she had feelings for him. Terms of affection were captured in the telephone transcripts. Because this ample evidence supports the jury's special verdict finding without consideration of Finding of Fact 5, Rojas does not establish the outcome of the trial would have been different but for defense counsel's deficient performance.

---

[9] State v. McFarland, 127 Wn.2d 332, 337, 899 P.2d 1251 (1995).

[10] Thomas, 109 Wn.2d at 226 (quoting Strickland, 466 U.S. at 694).

[11] Thomas, 109 Wn.2d at 228-29 (citing State v. Adams, 91 Wn.2d 86, 91, 586 P.2d 1168 (1978); State v. White, 81 Wn.2d 223, 225, 500 P.2d 1242 (1972).

CONCLUSION

Rojas shows that his defense counsel was ineffective for failing to request redaction of Finding of Fact 5 at the first trial. But, Rojas has not shown that but for his counsel's deficiency, there is a reasonable probability that the result of the trial would have been different. We affirm Rojas's conviction.

_____
Leach, J.


WE CONCUR:

_____        _____

9