IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the custody of | ) | |
| | ) | No. 36781-9-III |
| LISA A. HOMER, | ) | |
| TODD HOMER, | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | UNPUBLISHED OPINION |
| and | ) | |
| | ) | |
| RHONDA M. HOMER, | ) | |
| D.W., | ) | |
| | ) | |
| Respondents. | ) | |

KORSMO, J.P.T.[1] — Rhonda Homer appeals from an order granting her father and

his wife, Todd and Lisa Homer, custody of her son, MW.[2] She primarily argues that the

court lacked recent evidence of her inability to parent. We affirm.

---

[1] Judge Kevin M. Korsmo was a member of the Court of Appeals at the time argument was held on this matter. He is now serving as a judge pro tempore of the court pursuant to RCW 2.06.150.

[2] To protect the privacy of the minors involved in this case, we will refer to them and their fathers by their initials. For clarity, we occasionally will refer to the three adults sharing the Homer surname by their first names.

FACTS

Rhonda Homer is the mother of three children by three different fathers: SG (born February 2013), MW (born August 2015), and WR (born 2017). At the time of trial in March 2019, Rhonda lived with WR and JR, WR's father.

SG has lived exclusively with her father, JG, since she was one years old. A temporary parenting plan placed the child with the father and permitted supervised visitation with Rhonda once a week. Rhonda stopped visiting SG in the months leading up to the June 2016 trial on a final parenting plan and has had no contact with SG since then.

A Family Court Investigation (FCI) was prepared in response to JG's request for a final parenting plan. Ex. 1.4. The report detailed incidents of domestic violence, police responses, drug usage, and Rhonda's mental health treatment history. The report writer concluded that while JG had responded to the challenge of raising a young child by maturing, Rhonda had not. Until she was successfully treated for multiple mental health problems and for drug abuse, Rhonda was not capable of parenting. Ex. 1.4 at 39-41. Rhonda was concerned only for herself and was unable to parent either SG or MW. *Id.* at 41-42.

The trial court, the Honorable Douglas Federspiel, entered a series of findings following trial in 2016 over the custody of SG that became significant for this action. The

court determined that Rhonda's conduct was adverse to the child's best interest because

of:

> Neglect or substantial nonperformance of parenting functions.
>
> A long-term emotional or physical impairment which interferes with the performance of parenting functions as defined in RCW 26.09.004.
>
> A long-term impairment resulting from drug, alcohol, or other substance abuse that interferes with the performance of parenting functions.
>
> The abusive use of conflict by the parent which creates the danger of serious damage to the child's psychological development.

Ex. 1.13 at 1-2.

The court conditioned modification of the parenting plan upon Rhonda meeting

the following conditions:

> obtain a psychiatric evaluation and follow all recommended treatment for her diagnoses which include but are not limited to: reactive attachment disorder, PTSD, bipolar disorder; anxiety, and major depressive disorder.
> . . .
> get an anger management evaluation and follow recommended treatment;
> . . .
> get an alcohol and drug evaluation and follow all recommended treatment.

*Id*. at 4.

The court restricted Rhonda's visitation until she had met all of the treatment

requirements and stayed in compliance for one full year.  *Id*. at 3.  She also was not to

have any contact with DW or any other known sex offender.  *Id*.  Rhonda contested the

treatment provisions, arguing that she had already spent two years in psychological

3

treatment. Judge Federspiel, however, was convinced that Rhonda was merely trying to look good to the court rather than address her treatment needs.

Rhonda ended her relationship with DW, MW's father, sometime after the child's birth.[3] In January 2016, shortly after the completion of the FCI related to SG, Todd and Lisa filed a petition for non-parent custody of five-month-old MW; Amanda Stone, Rhonda's sister and Todd's daughter, likewise petitioned for custody of MW. At the time, MW suffered from a swollen stomach and was severely constipated.[4] After conflicting custody orders were entered in the two matters, the cases were consolidated. Ms. Stone told the family court investigator that she hoped to have custody of the child for about a year before he could be returned to Rhonda, whom she thought a capable parent. Believing that it would take more than a year before Rhonda would be able to parent MW, the investigator recommended that custody be given to Lisa and Todd, with Rhonda receiving four hours of supervised visitation per week. Ex 1.3 at 7. The FCI, filed in late April 2016, also recommended that Rhonda abstain from using drugs 48 hours before visitation, participate in drug and alcohol treatment, and undergo counselling with a therapist who is familiar with the contents of the FCI. *Id*. The trial court responded by

---

[3] MW's father was never served, did not take part in the trial, and is not a party to this appeal.
[4] Medical records indicate that those problems were related to an untreated dairy allergy and that moving the baby to soy products worsened the condition. Ex. 5.

placing the child with Lisa and Todd and adopting the recommendations of the FCI in full. Ex. 1.1 (May 26, 2016).

Just as she dropped out of SG's life after the temporary order entered in the first case, Rhonda also dropped out of MW's life; after a few visits with MW, she refused to meet with Todd to set up visitation. No effort was made to satisfy the requirements of the temporary custody order for MW or those for modifying the custody of SG. Her interactions with Lisa and Todd were sporadic, but negative. At the funeral for her cousin who died in an automobile accident, Rhonda yelled at Lisa and said that she should have been killed in an accident instead. WR was present during the incident. Social media postings and text exchanges showed that Rhonda's lifestyle had not changed and that she was engaged in prostitution. She also was hateful and abusive when angry at family. She was arrested for threatening to kill WR and then attempted to commit suicide in jail in 2017.

Todd and Lisa sought entry of a permanent parenting plan for MW. The matter ultimately proceeded to trial before the Honorable Michael McCarthy. Rhonda was unrepresented until just before trial, a fact that resulted in no discovery occurring. The noted testimony was presented and numerous exhibits were entered at the trial. JG testified to his concerns about Rhonda and his fear that she would flee with a child if she had the opportunity. The family court investigator testified about her investigation of Rhonda and JG in the first case, Rhonda's refusal to meet with her concerning MW, her

5

review of Rhonda's social media postings, and that she had no information indicating that Rhonda had changed her lifestyle. Rhonda and her sister both testified that Rhonda was a capable parent whose skills had improved over time. At the conclusion of testimony, Todd and Lisa argued that Rhonda was unfit due to untreated mental health and drug abuse concerns, while Rhonda argued that she had turned her life around and that there was no evidence she currently was unfit to parent.

Judge McCarthy ruled from the bench immediately at the close of argument. He identified the question before the court was whether Rhonda was currently unfit to parent. Report of Proceedings at 433. He began by discussing credibility and found that Todd was credible and genuine. He also questioned Rhonda's credibility, pointing to her lack of memory and the absence of corroboration for critical aspects of her testimony. He noted that in termination cases, parents often take action in the last few months before trial that should have been attempted years earlier; he likened Rhonda's current efforts to those parents scrambling to take action at the last moment. Returning to the question of parental fitness, Judge McCarthy concluded that Rhonda was unfit to parent due to her untreated mental health issues that resulted in her neglect of MW. Striking to the court was her threat to kill WR and the effort to take her own life, as well as the fact that she had made no effort to address Judge Federspiel's conditions for regaining custody of SG. The court also believed that substance abuse problems rendered her unfit to parent.

Written findings were entered, and additional findings were detailed in the final parenting plan as the basis for restrictions on parenting. Clerk's Papers (CP) at 3-11, 13-14. Ms. Homer then timely appealed to this court. A panel heard argument of the case through video technology.

ANALYSIS

Rhonda Homer contends that the trial court's findings are not supported by the evidence. She also argues that the court's findings do not support its conclusion and that the court erred by not presuming her fit to parent. We treat those two arguments as one.[5]

Well settled law governs our review of these issues. This court reviews a trial court's decision following a bench trial to determine whether substantial evidence supports any challenged findings and whether the findings support the conclusions of law. *State v. Hovig*, 149 Wn. App. 1, 8, 202 P.3d 318 (2009). "Substantial evidence" is sufficient evidence to persuade a fair-minded person of the truth of the declared premise. *Panorama Vill. Homeowners Ass'n v. Golden Rule Roofing, Inc.*, 102 Wn. App. 422, 425, 10 P.3d 417 (2000). In determining the sufficiency of evidence, an appellate court need only consider evidence favorable to the prevailing party. *Bland v. Mentor*, 63 Wn.2d 150, 155, 385 P.2d 727 (1963). We defer to the trial court's credibility determinations; we will not reweigh evidence even if we would have resolved conflicting evidence

---

[5] Todd and Lisa also seek attorney fees for defending against a frivolous appeal. We do not consider this appeal frivolous and we deny that request.

differently. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 575, 343 P.2d 183 (1959); *Quinn v. Cherry Lane Auto Plaza, Inc.*, 153 Wn. App. 710, 717, 225 P.3d 266 (2009). Conclusions of law are reviewed de novo. *Robel v. Roundup Corp.*, 148 Wn.2d 35, 42, 59 P.3d 611 (2002).

Appellate courts accord trial courts deference in a number of areas, including, as noted above, the weight to be given to evidence. Discretion is abused when it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). In a bench trial, judges are presumed to follow the law and to consider evidence solely for proper purposes. *State v. Adams*, 91 Wn.2d 86, 93, 586 P.2d 1168 (1978); *State v. Miles*, 77 Wn.2d 593, 601, 464 P.2d 723 (1970); *State v. Bell*, 59 Wn.2d 338, 360, 368 P.2d 177 (1962).

With these standards in mind, we turn to Rhonda Homer's contentions.

*Substantial Evidence*

Rhonda Homer assigns error to the findings of fact contained in paragraphs 8, 9, and 10. CP at 5-6.[6] Her argument is not a traditional challenge as she admits that the facts generated a "genuine question about her fitness as a parent" at the time of the initial

---

[6] To the extent that similar findings are reiterated in the final parenting plan, we consider the assignments of error to include the findings located in that document. Appellant also assigns error to seven findings of fact that she alleges "do not support the Trial Court's Conclusion" (Br. of Appellant at 2) that we will consider under the evidentiary sufficiency section.

custody ruling in 2016. Br. of Appellant at 18. Rather, she contends that no recent evidence of her ability to parent was presented, resulting in the court relying on "stale" evidence. We disagree. The complaint about staleness has little to do with the evidentiary support undergirding the findings and a lot to do with the weight the evidence should have been given in light of the need to determine Rhonda Homer's current fitness to parent MW. We discuss the latter aspect in the next section of this opinion.

The challenged findings state that MW was not living with his parents and that neither was a suitable custodian, it was in the child's best interest to live with Todd and Lisa Homer, and visitation was not appropriate. CP at 5-6. To the extent that these are truly findings of fact, they are supported by the evidence. MW, for instance, had not been in his mother's care since he was four months old. At the time of trial, he was nearly 43 months old. The finding that MW was not living with his parents was supported by the evidence.

Whether either parent was a suitable guardian or whether visitation was appropriate are primarily conclusions of law and should be treated as such. Paragraph 9 is a mixed question of fact and law. As to the factual component, there was ample evidence that MW was thriving in his grandparents' care and enjoyed a nice lifestyle. Thus, the evidence supports the challenged finding that it was in his best interest to live with his grandparents.

The actual thrust of appellant's challenge to these findings lies in her argument that they have no currency. We address that claim in the following section.

*Evidentiary Sufficiency*

Rhonda Homer argues that the evidence was insufficient because it did not address her current fitness to parent. The evidence allowed the veteran trial judge to conclude that she was unfit because she had made no efforts to remedy her parenting deficiencies.

To prevail in a third party custody action, the petitioners must show that a child is not currently living with his or her parents, or that neither parent is a suitable custodian. RCW 26.10.030(1). The case law defines the requirements differently—a petitioner must establish that neither parent is fit or that parental custody results in actual detriment to the child. *In re Custody of B.M.H.*, 179 Wn.2d 224, 235-236, 315 P.3d 470 (2013). This case was tried under the theory that the parents were unfit.[7] This required proof that Rhonda was unable to meet her child's basic needs. *Id*. at 236.

Rhonda assails the court's conclusions on the theory that its factual findings do not support a conclusion that she currently was unfit to parent MW. Her argument implicitly concedes that the conditions in 2016 that led the court to grant custody to Todd and Lisa supported that initial determination that she was not a fit parent at that time; she never challenged that determination and it is in essence the law of this case. While she

---

[7] The record does not contain the petition nor any pleadings or record relating to the original placement decision.

correctly focuses on the current conditions at the time of trial, her earlier behavior was not irrelevant to determining her current fitness to parent. All trials necessarily involve evidence of past behavior.

Thus, evidence of Rhonda's fitness to parent MW throughout the child's lifetime was relevant to the question of her current fitness to parent him. The two investigation reports established both her inability to parent either child in 2016 and the reasons that Judge Federspiel set conditions to be satisfied before she could parent SG. The grandparents produced evidence that Rhonda's behavior did not change during the ensuing 33 months before the 2019 trial. She continued to abuse drugs, posted online photographs and commentary concerning drug usage, made no effort to seek treatment for her mental health problems, did not seek treatment for drug usage, continued to verbally abuse others when angry, was involved in domestic violence incidents with her new boyfriend, and did not exercise visitation with the child. Not only did she not visit either of her two eldest children, she then threatened to kill the one child who was in her care and attempted to commit suicide when jailed for the threat. This evidence understandably convinced the trial judge that Rhonda remained unable to care for herself or for her children. She had been neglectful in the past and there was no evidence that she had obtained the necessary tools to successfully parent.

The trial court rejected Rhonda's testimony suggesting that conditions had changed, expressly finding Rhonda not credible due to lack of detail, lack of memory,

and the failure to support her testimony that she was attending to some of her treatment needs. CP at 10. Although irrelevant to the question of whether the evidence supported the court's conclusions, the court also discounted other testimony suggesting that Rhonda had made minor cosmetic changes to her lifestyle in the weeks leading up to the trial.

The evidence established that by 2016 Rhonda had neglected two children in her care, including MW. She made no significant effort to remedy the problems that led two judges to find her unfit at that time. The grandparents provided evidence that her risky behavior continued largely unabated and, ultimately, she put her new child at risk. The trial court did not err in concluding that the evidence showed Rhonda was currently unfit to parent MW.

The judgment is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.P.T.

WE CONCUR:

_____
Fearing, J.

_____
Lawrence-Berrey, J.

12